---
Roberts *v.* Winton.
---

ROBERTS *v.* WINTON.

(*Nashville.*    March 5, 1898.)

1. LIFE INSURANCE.    *What law controls disposition of proceeds of policy.*

   In a contest, in the Courts of this state, between the creditors of the insured and the beneficiaries named in a life policy, over the proceeds of the policy, the laws of Alabama control, where it appears that the insured was, at the date of the policy, and at his death, a resident of that State, although the company issuing the policy, and the beneficiaries therein named, were nonresidents of that State, and the latter residents of this State.    (*Post, pp. 485–491.*)

2. SAME.    *Proceeds of policy not subject to insured's debts, when.*

   The creditors of the insured cannot recover of the beneficiaries named in a life policy the proceeds of the policy collected by them, where it appears that nothing of any value to his creditors had been paid upon the policy.    (*Post, pp. 491–493.*)

---
FROM COFFEE.
---

Appeal from Chancery Court of Coffee County. W. S. BEARDEN, Ch.

T. C. LIND, GEO. S. RAMSEY, HENRY K. WHITE, and JAMES MITCHELL for Roberts.

F. M. SMITH and B. P. BASHAW for Winton.

WILKES, J.   In December, 1895, Geo. T. Winton,
then a resident of Birmingham, Ala., took out a
policy of insurance upon his life, payable to his
father and mother, who lived in Coffee County,
Tenn.   The policy was for $5,000, and was issued
by the Mutual Benefit Life Insurance Company, of
Newark, N. J.   For the first installment premium
upon the policy the assured gave his check for
$28.76 to the agent of the company, and the agent
advanced the amount of the check to the company.
When presented to the bank this check was not paid,
and the agent retained it in his hands until after
the assured's death, on the fifteenth of January, 1896,
and the settlement by the insurance company with
the payees of the policy.   It was then paid to him
by William R. Gunn, a brother of the assured's
mother.

After the assured's death, in Alabama, his re-
mains were sent to his father, defendant T. J. Win-
ton, in Tennessee, for burial, and at the same time
the life insurance policy was delivered to him by
William R. Gunn.   He returned it to Gunn to take
back with him to Birmingham, where Gunn resided,
in order that it might be collected for him.   Gunn
administered in Alabama upon the estate of the in-
sured, and thereafter returned the policy to the
father, in Tennessee, and the insurance company
compromised and settled the policy with the father
and mother by the payment of $2,500 to them in
full of all liability thereunder.   T. J. Winton, the

father, paid over, of this amount, $1,000 to Gunn, partly in consideration of funeral expenses he had advanced and incurred, and upon his promise to settle for the same thereafter. Gunn paid off the check for the first premium, which was held by the agent, as he states, as a worthless claim against the insured, the payment by Gunn being, as he states, gratuitous.

In regard to the form of the policy, it is. only necessary to state that it was payable to T. J. and Sarah F. Winton, father and mother of the assured, Geo. T. Winton, in case they, or either of them, survived him; if not, then to his estate, and it was payable at the office of the company in Newark, N. J.

The complainants are creditors of Geo. T. Winton, the insured, who died insolvent. It is charged that Gunn, the Alabama administrator upon the insured's estate in Alabama, conspired with T. J. Winton, the father, to remove the policy to Tennessee, and thus place it, as an asset of Geo. T. Winton's estate, beyond the jurisdiction of the Courts of Alabama, and in the hands of the defendant in Tennessee, and that they, as creditors, have a right to follow the proceeds of the policy, and collect and appropriate them to their debts. The bill is filed as a general creditors' bill.

An amended bill was filed, alleging that there was no administrator in Tennessee upon the insured's estate, and repeating that the administrator in Ala-

bama had colluded with the defendants in Tennessee to remove the funds from Alabama and beyond the jurisdiction of its Courts, and it was asked that an administrator *ad litem* be appointed if necessary. The bill as thus amended was demurred to. It was then amended the second time by showing that Jno. E. Patton had been appointed administrator in Tennessee, and making him a party, and the demurrer was then overruled.

Defendant, Winton, answered, denying the equities of the bill, insisting that the contract of insurance should not be construed by the laws of Alabama, but by the laws of Tennessee or New Jersey, and denying that he was guilty of any fraud in obtaining the proceeds of the policy. The Chancellor was of opinion that the answer denied the equities of the bill, and that it was not sustained by the proof, and dismissed the bill. On appeal, the Court of Chancery Appeals reversed this decree, sustained the bill, granted the relief prayed, and defendants have appealed to this Court, and assigned errors.

It is insisted the Court of Chancery Appeals erred in holding that the contract must be construed by the laws of Alabama, and not by the laws of New Jersey or Tennessee. It is further insisted that there was no assignment of the policy of insurance or other assets of the insured's estate involved, but that the policy was made payable, in the first instance, to the defendants; that there was no relation existing between the insured's creditors and the defendant

beneficiaries that would warrant any recovery by them against defendants; that defendant having received the money in good faith, believing that he was entitled to it, his only liability, if wrongfully received, was to Gunn, who paid it to him, and the creditors' remedies were against Gunn, and not against them; that, as a matter of fact, the insured never paid any premium or consideration for the policy, and his creditors could not, therefore, have any interest in it or its proceeds; and, finally, that if the creditors could recover anything, it could only be the amount paid out by the insured, and not the insurance purchased by such payment.

The first question presented and necessary to be considered, is whether this contract of insurance is to be construed and governed by the laws of Alabama, New Jersey, or Tennessee, so far as the rights of the creditors of the insured, and the beneficiaries under the policy, are concerned. . The Court of Chancery Appeals was of opinion the laws of Alabama, and not those of New Jersey or Tennessee, must control, and in this we are of opinion that Court is correct. Alabama was both the place where the contract was entered into and where the insured resided at the time it was made. The general rule is that the *lex domicilii*, or the *lex loci contractus*, governs and determines the validity of contracts relating to personal property. 3 Am. & Eng. Enc. L., 552, p. 571, and notes; citing authorities. Here the *lex domicilii* and *lex loci contractus* concur.

Several provisions of the Code of Alabama are cited as determining what the law of that State is in regard to proceeds of policies of insurance, and the rights of widows and creditors, but they refer to cases where the insurance has been effected by the wife upon the life of the husband, and not to cases like the present, where the insured has placed a policy on his own life in favor of his father and mother.

We are also referred to the case of *Fearn* v. *Ward*, 65 Ala., 33. In that case, Fearn had insurance payable to his infant daughter, Kate Coles Fearn, and, after his death, the proceeds of the policy were paid over for the infant daughter, and invested for her by her guardian. It appears that the policy was for $10,000, and that the insured had paid something less than $500 upon it in the way of premiums. It was held that, under the provisions of § 2333 of the Code of Alabama of 1876, the exemption therein provided was designed for the benefit of the wife and children, and inasmuch as the policy was payable to and for the benefit of only one of several children, it was not protected by the statutes, and that the statute could not operate as to contracts made before its passage, and that the conveyance of the insurance was voluntary and fraudulent as to existing creditors, whether their liability was fixed or contingent. It appears that the policy was originally taken out payable to the wife and children, but subsequently that policy was canceled,

Roberts *v.* Winton.

and another issued to the infant as before stated.
It is presumed this is what the Court referred to
as a conveyance of the insurance, as no transfer or
assignment of it appears.

The demurrer of the bill having been overruled
and cause remanded, it was tried and again ap-
pealed to the Supreme Court, where it is reported
in 80 Ala. Reps., 555. The Court thereupon re-
affirmed its former holding, that the policy being
payable to one only of several children, was not
protected by the exemption in the statutes. It was
further held that the investment of premiums by the
insured in this policy was, in effect, a gift by the
father to the child, which would be void as to ex-
isting creditors of the father, and that such creditors
were entitled to have their debts satisfied out of the
proceeds, and were not confined merely to the pre-
miums paid; that the proceeds of the policy consti-
tuted the property purchased, and was the subject
matter of the investment; that the father being in
debt, the premiums paid must be treated as a vol-
untary investment, and hence fraudulent in law as
to existing creditors.

The Court of Chancery Appeals construe this
holding to be, in effect, that the taking out of a
policy of life insurance, upon the life of any person
not protected strictly by the exemption of the stat-
ute, must be treated as an investment of the in-
sured's money, and would inure to the benefit of
his estate, which a creditor, upon the death of the

insured, may follow into the hands of the beneficiary named in the policy, who has received the same from the insurance company.

Applying the rule to the facts of this case, the Court of Chancery Appeals was of opinion that the creditors of the insured have the right to follow up and reclaim the $2,500 paid over to T. J. Winton, the beneficiary named in the policy, and to have it administered as a part of the estate of insured deceased, but that inasmuch as the said T. J. Winton had received the proceeds in good faith, and had paid part of it on just debts of the estate, to that extent he should have credit. A decree was therefore entered for the sum of $2,500, but the cause was remanded to the Court below, and execution in the meantime was suspended in order that an account might be taken of the debts thus paid, and for which the defendant is entitled to credit, and the balance is directed to be paid into the Chancery Court of Coffee County, to be there administered as assets of the estate of G. T. Winton, deceased, as an insolvent estate, and the costs were adjudged against the defendants, so far as accrued.

Conceding that the Court of Chancery Appeals is correct in their construction of the law applicable to the case, there is a feature of it, as developed in the record, which is necessarily fatal to the claim of complainants. They can only recover upon the theory that the insured diverted into life insurance investment, funds which his creditors had a right to

subject to their debts. It is only upon the theory that the insured had such a fund or asset liable to his creditors, and which he removed from their grasp by investing it in insurance, that they can recover. To illustrate: Suppose the insured had invested in insurance property which, by the laws of Alabama, was exempt from seizure for his debts, it cannot be that because such funds were thus invested, nevertheless a creditor could follow the fund into the investment and seize it, though it was made in the name and for the benefit of another. At most it could be only a gift by the son to the father, of funds or property exempt from the seizure by creditors of the son, or the proceeds of such funds so invested.

But the present case is even stronger, inasmuch as the deceased did not invest a dollar of his funds or any of his property in this insurance of any kind whatever. On the contrary, he gave his individual check to the agent, which proved entirely worthless, as he had no funds in bank to meet it. In other words, he purchased this insurance with his individual credit—a promise to pay. But his credit and promise to pay was not an asset which a creditor could seize any more than would have been his personal labor. Having put nothing into this insurance upon which his creditors could have had any claim when it was put in, or rather when the policy was issued, though nothing had been put in or paid, there is nothing which the creditor could follow up.

Roberts *v.* Winton.

In this view of the case there is no possible ground upon which the complainants can recover as creditors, or have any right to follow up this policy, or its proceeds, but such proceeds passed to the beneficiaries under the terms of the policy. It is not necessary to pass upon other questions involved, as this must be controlling.

The decree of the Court of Chancery Appeals is reversed, and the complainants' bill dismissed at their cost.