IDA L. HAAS, APPELLANT, V. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, APPELLEE.

FILED FEBRUARY 29, 1912. No. 17,227.

1. **Process: SUMMONS: AMENDMENT.** A petition was filed against "Mutual Life Insurance Company of New York"; the summons and return thereto named the party defendant in like manner. The proper name of defendant is "The Mutual Life Insurance Company of New York." The summons was served upon the managing agent of defendant. Defendant made a special appearance objecting to the jurisdiction. Before the objections were submitted the plaintiff filed motions to amend the petition, summons, and return by correcting the name of defendant. These motions were sustained. The plea to the jurisdiction was then overruled. The summons was served before the bar of the statute of limitations had fallen; the amendment was made thereafter. *Held*, That it was not erroneous to allow the amendment to be made, and that it related back to the date of the service of the summons upon the proper person.

2. **Judgment:** RES JUDICATA. A general demurrer to a petition was sustained in the circuit court of the United States and the plaintiff given leave to amend; an amended petition was then filed containing additional allegations; a general demurrer was filed to this petition, but while the demurrer was pending, and before submission, the action was dismissed at the plaintiff's request. The petition in this case is substantially identical with the latter petition in the federal court. *Held*, That the ruling upon the demurrer to the first petition and the judgment of voluntary dismissal do not establish the defense of former adjudication.

3. **Insurance:** CONTRACT: PLACE OF CONTRACT: LAWS GOVERNING. Where a resident of Nebraska, who then owned a paid-up policy of insurance in the defendant company, made an application at his home in this state for a new policy to an agent of the defendant who was authorized to transact business for it in this state, and submitted to a medical examination, and delivered to the agent here his paid-up policy with a paper authorizing and directing the company to apply from the surrender value of the former policy the amount of the first two premiums, and pay the remainder to him in cash, and afterwards, without any communication between the applicant and the home office, the agent in this state delivered the new policy and a check for the balance due on the surrender value, the contract was completed in Nebraska, and is to be governed by the laws of this state, and not by those of the state of New York where the home office of the defendant is.

4. ——: ——: ABANDONMENT OF CONTRACT: QUESTION FOR JURY. Whether or not the insurance contract was abandoned is a question of fact for the jury to determine.

5. ——: CONSTRUCTION OF POLICY: FORFEITURE. When the insured died, the insurer had in its possession an accumulated reserve on his policy sufficient to pay the premiums upon the policies for more than three years and until after his death. There being no forfeiture clause in the policy, *held* that the insurance was in force at the time of his death, unless the policies were abandoned.

6. ——: ——: INCONTESTABILITY. The incontestable clause of the policies sued upon does not apply to the defense of lapse or forfeiture by nonpayment of premiums, or to the defense of abandonment of the contract.

7. ——: ——: RIGHTS OF. INSURED. There being no forfeiture clause in the policy, its provisions allowing options to the insured of taking a paid-up policy, etc., on default of payment of premium on the day fixed, did not bind the insured to exercise the options,

and he had the right to rely upon the main and not upon the ancillary or subordinate stipulations, if it seemed best to him so to do.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Reversed.*

*Charles S. Elgutter* and *Joel W. West,* for appellant.

*Montgomery, Hall & Young* and *Frederick L. Allen,* contra.

LETTON, J.

On a previous appeal, opinion reported in 84 Neb. 682, it was determined that a general demurrer to the petition had been erroneously sustained by the district court, and its judgment was reversed and the cause remanded for further proceedings.

The point determined on the former appeal was in substance that, if a policy of life insurance contains no provision for a forfeiture by reason of the failure of the insured to pay subsequent premiums *ad diem,* a failure to pay such premiums on the day named will not of itself forfeit such policy.

On being remanded, issues were made up in the district court, the cause tried, a verdict directed for the defendant, and from a judgment of dismissal plaintiff appeals.

Omitting some unimportant matters, the answer pleads the statute of limitations, former adjudication, and abandonment of the contract by the insured in his lifetime, and further alleges, as the fifth defense, that the policies sued upon are New York contracts and are governed by the laws of that state; that the defendant gave notice to the insured as provided by the statutes of that state of the falling due of the several premiums, and that the notices so given stated that, "unless the payment so due shall be paid to this company by or before the said day, the policy and all payments thereon will become forfeited and void, except as to the right to a surrender value or paid-up

policy as provided by statute." It is then alleged that the premiums were not paid, and that under the laws of New York such failure to pay the premiums caused the policies and each of them to lapse and to become of no effect, except as otherwise provided in the policies; that Haas knew of such result and accepted the policies accordingly. It was further alleged, referring to the clauses in the policy referring to paid-up policy, options, etc., that under sections 88 and 90, laws of New York, 1892, a failure to pay any premium after the third premium would cause the policies to lapse, except for the purpose of obtaining substitute contracts, and that by the laws of New York the rights of delinquent policy holders are limited to those mentioned in section 88. It is also alleged that Haas never requested either a paid-up policy or other optional contract, and that none was issued to him, and that by reason of these laws and the failure of Haas to pay the premium or exercise his options the policies lapsed and became void long before the death of the insured.

The reply consists of general denials; a plea as to the allegations that the contract was a New York contract, that this is no defense on account of failure to give notice as the New York statutes require; and in substance that the contracts were made in Nebraska and are Nebraska contracts.

After the evidence of both parties had been adduced, the district court instructed the jury that the plaintiff was not entitled to recover "on the ground that the policies were forfeited for nonpayment of premiums and notice of forfeiture duly given during the lifetime of Andrew Haas." A number of errors are assigned in the motion for a new trial and in the briefs, but we think it unnecessary to consider them in the order of assignment.

The third defense pleaded is that the action is barred by the statute of limitations. The original petition was filed on the 23d day of April, 1907, against "Mutual Life Insurance Company of New York." The true name of the defendant is "The Mutual Life Insurance Company of

New York." The summons and return showed service upon the proper agent of the defendant under the wrong name. Defendant made a special appearance objecting to the jurisdiction, and on June 13, 1907, and before the objections were submitted, the plaintiff filed motions to amend the petition, summons, and return by correcting the name of defendant. These motions were sustained, and the plea to the jurisdiction was overruled. The insured died on the 1st day of May, 1902, so that if the original summons which was served on April 27, 1907, was sufficient to bring it into court, the action was begun within the five-year limitation. Section 144 of the code provides: "The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process, or proceeding by adding or striking out the name of any party or by correcting a mistake in the name of a party, or a mistake in any other respect." The omission of the article "the" in defendant's name cannot be regarded as fatal when the summons was served on the proper person. The defendant was apprised of the action, and, the summons being served before the bar of the statute fell, the amendment related back and the action was begun in time. Amendatory statutes would be of little use if they could not be applied under such circumstances.

As to the fourth defense: An action was begun on these policies in the circuit court of the United States for this district. A demurrer to an amended petition was filed and sustained. By leave of court a second amended petition was filed, which is identical with the petition in this case. A general demurrer was filed to this petition, but before it was submitted or considered by the court the action was dismissed by the plaintiff. Defendant contends that the second amended petition differed in no essential respect from the first, to which the demurrer was sustained, and, hence, that the order of the court sustaining this demurrer and providing "the plaintiff is granted ten days in which to file amended petition, other-

wise judgment will be entered dismissing said action at the cost of the plaintiff," and the dismissal, was a final adjudication. We cannot take this view. When the second amended petition was filed, if it had been identical in substance with the first, it should have been stricken from the files at defendant's instance. Two additional paragraphs had been added, however, which defendant now insists did not change the legal effect. The federal court and the defendant itself evidently took the second amended petition as *prima facie* evidencing a change in the material facts alleged, or the case would not have been dismissed with an issue of law pending. To hold as defendant urges would require this court to pass upon the question whether that court was right in treating the second petition as being different from the first, and in allowing the case to be dismissed at the plaintiff's request with that question undetermined. This we are not inclined to do.

The fifth defense is based upon the proposition that the policies issued are New York contracts, and that under their provisions and the laws of that state they were forfeited during the lifetime of the insured. The facts relied upon to establish this defense are as follows: At the time applications were made for the two policies Haas was the owner of two paid-up policies for $1,500 each issued by the defendant. One of these policies at this time had a cash surrender value of $522.18. On July 9, 1896, one H. S. Winston, an agent of the defendant, who was a neighbor and friend of the insured, procured from Haas in Omaha an application for a new policy for the sum of $5,500, under an agreement that he should surrender the paid-up policy, that from the cash surrender value two premiums on the new policy should be paid, and the remainder of the surrender value paid in cash. At the same time Mr. and Mrs. Haas executed and delivered to the agent a paper entitled "Conversion Receipt," which acknowledged the receipt from the defendant of $522.18 by them, in full payment of the value of policy No. 677,819

now surrendered to the company for the purpose of converting the policy into another for $5,500, and providing that two of the yearly premiums were to be paid out of the surrender consideration, the remainder, if any, to be paid in cash. This paper was not dated when it was signed, though a blank space was provided for that purpose, but after the application had been approved the date of August 18, 1896, was inserted in the blank space at the company's office in New York. The application, conversion receipt, and old policy were delivered to the agent in Omaha, and Haas took the medical examination there.

The evidence shows that the defendant had appointed a general agent for Iowa and Nebraska, Mr. R. J. Fleming of Des Moines, and that the defendant's business for these states was conducted by himself and brother under the firm name of "Fleming Brothers, Managers." This firm maintained offices in Des Moines and in Omaha, and "Fleming Brothers, Managers" had the general control and management of the business of the defendant in the states named. Soliciting agents were also appointed by the defendant, who were under the direction of Fleming Brothers. Both Fleming Brothers and the soliciting agent, Winston, were authorized to transact business for the defendant company in Nebraska by the state auditor, under the provisions of section 6513, Ann. St. 1911. Winston acted under the immediate direction of Fleming Brothers, Managers. The application and other papers were sent to the home office in New York by the agents, where it was accepted and the new policy No. 775,291 made out. A statement of account was made up and a check drawn for $141.48, which amount, together with the two premiums agreed to be paid, made up the surrender value of the old policy. The policy and check were then sent by mail to Fleming Brothers, Managers, for delivery. The papers were given by them to Winston, the agent, in Omaha. The check, after being indorsed, was cashed by Haas at an Omaha bank, and the policy was found among Haas' papers in

his office in South Omaha after his death.  Haas was not in the state of New York in 1896.  The second policy was obtained in like manner, except that it was at a later date in the same year.  The policies bear stamped on the back: "Any change in address notify Fleming Bros., Managers, Des Moines, Iowa."

Was this contract entered into in New York or in Nebraska?  No communication was ever had by mail or otherwise, so far as the evidence shows, between Haas and the defendant at its home office in New York.  The agent Winston took the application, received the old policy and the conversion receipt in Omaha, and, after the papers were given to him by Fleming Brothers, there delivered the new policy and the check to Mr. Haas.  The defendant places much stress upon a clause in the application that the statements therein made "are offered to the company as a consideration of the contract which I hereby agree to accept, and which shall not take effect until the first premium shall have been paid  *  *  *  and the policy shall have been signed by the secretary of the company." It argues that the contract became binding and complete upon the company accepting surrender of the old policy, the secretary signing the new one in New York and mailing it to its agent for delivery, for the reason that the last act necessary to the validity of the control was the conversion to its own use from the surrender value of the old policy of the amount of the first two premiums upon the new.  While the liability of the company might perhaps attach under some circumstances even if the policy were never delivered (*Cooper v. Pacific Mutual Life Ins. Co.,* 7 Nev. 117; *Fried v. Royal Ins. Co.,* 50 N. Y. 243), the fact of liability does not always control and determine the question as to the locality of the contract.  Other circumstances may enter as factors in the determination of this.  The transaction with the agent was not a contract for the new insurance alone.  It was for the payment of the surrender value of the old policy as well.  This part of the transaction was not completed until the delivery of the

new policy evidencing the application of a part of this value as premium on a new policy, and the payment of the remainder due on the surrender value of the old. These acts were all performed in Nebraska. The defendant is not entitled to sever the transaction and to say that, because a portion of the agreement was carried out in New York, that portion of it which constituted a new insurance contract controlled and governed the legal status of the whole transaction. Moreover, in this contract, as in every other contract, there must be a proposal and an acceptance, and that acceptance communicated to the person who proposed the contract or to some one acting for him and in his behalf. The evidence shows that Haas made the proposal, but that he had no notice or knowledge of its acceptance until the delivery of the policy. The only person with whom he dealt in the transaction was Winston. It was through him he made the proposal, and it was through him he acquired knowledge of the acceptance. If the policy had been sent direct to him by mail, thus evidencing the intention of the insurance company to part with its dominion or right of recall over it, the acceptance would probably be deemed complete, and the constructive notice of such acceptance given by its deposit in the mails would be sufficient. But this is not the case here.

In *Horton v. New York Life Ins. Co.*, 151 Mo. 604, 52 S. W. 356, the insured was a resident of Missouri. His application for the policy was made in Missouri to the local agent of defendant, accompanied by a note for premiums, and was forwarded by the agent to the home office in the city of New York. Upon the issuance of the policy it was forwarded through defendant's St. Louis office to the local agent for delivery in Missouri. In that case, as in the one at bar, it was contended that, since the premium accompanied the application and a receipt was given which made the contract binding when the application was accepted in New York, the acceptance of the application completed the contract without the actual de-

livery of the policy into the hands of the insured, and that, acceptance having taken place in New York, the transaction was a New York contract.

The conditional receipt referred to provided that the payment of the first two premiums was received "upon condition that, should the said application not be accepted by the New York Life Insurance Company, said note shall be returned upon surrender of this receipt; but, should the risk be accepted, the said insurance shall be in force from this date." After stating the law with regard to the making of contracts by mail, to the effect that where one makes a proposition by mail he thus invites response by mail and makes the mails his agent, the court said: "This does not change the rule of law that an acceptance to be binding must be communicated to the proposer; it only makes the deposit of the letter of acceptance in the mail, under those circumstances, constructive notice to him who made the proposal that his offer has been accepted. Until there is an actual or constructive notice to the other party of the acceptance it is still in the breast of the acceptor and may be revoked before it becomes binding. *Bruner v. Wheaton*, 46 Mo. 363; *Lungstrass v. German Ins. Co.*, 48 Mo. 201. Actual delivery of the policy was not essential to the consummation of the contract, if the company had chosen to signify to the insured by other means that his application was accepted. But the company did not choose to do so; the first intimation that the insured had that his application was accepted was the delivery to him of the policy. When the company resolved to accept the application it kept that resolution within its own breast, and took the precaution to send the policy to its own agent in Missouri to be delivered on condition of payment of the first premium, and withheld from the insured notice of its acceptance. This was simply a resolution within itself, with no outward indication, and within its own power to reconsider and change." The court pointed out that it was within the power of the company to recall the policy at any time while it was yet in the

hands of its own agent, and, while it did not base its decision upon this point alone, it was held that the contract was not complete until the policy was delivered, and, therefore, it was a Missouri contract.

In *Wall v. Equitable Life Assurance Society,* 32 Fed. 273, opinion by Brewer, J., the facts were that the defendant was a New York corporation doing business in the state of Missouri. The insured made his application in that state, which was forwarded to New York. The application was accepted in New York and sent to Missouri for delivery to the applicant there. By the terms of the policy the premiums were payable in New York, and, if the sum insured became payable, the payment was to be made in New York. This was held to be a Missouri contract. In the same case which was taken on error to the supreme court of the United States (*Equitable Life Assurance Society v. Clements,* 140 U. S. 226; *Equitable Life Assurance Society v. Pettus,* 11 Sup. Ct. Rep. 822), the opinion recites that it was alleged, and not denied, that the first and two later premiums were paid in Missouri, and it was implied in the pleadings that the policy was delivered by the company's agent in Missouri. The court say: "There is no evidence whatever, or even averment, that the policy was transmitted by mail directly to Wall, or that the company signified to Wall its acceptance of his application in any other way than by the delivery of the policy to him in Missouri." It was held it was a Missouri contract.

*Perry v. Dwelling-House Ins. Co.,* 67 N. H. 291, 33 Atl. 731. In this case it is said: "Upon these facts the contract was made, and concluded by the delivery and acceptance of the policy—not because of its delivery, but because until that moment the plaintiff had no notice of the acceptance of his application. Prior to that time the plaintiff was at liberty to revoke his application, and the defendants to withdraw their acceptance and countermand their instructions for the delivery of the policy. A proposition does not become a contract until the maker or his

agent is notified of its acceptance. *Beckwith v. Cheever,* 21 N. H. 41; *Stebbins v. Lancashire Ins. Co.,* 60 N. H. 65, 70; *Dickinson v. Dodds,* 2 Ch. Div. (Eng.) 463."

*Expressman's Mutual Benefit Ass'n v. Hurlock,* 91 Md. 585. This was a policy of fire insurance, and, while there may be a difference between policies of life and fire insurance in this respect, the principle as to acceptance applies. See *Heiman v. Phœnix Mutual Life Ins Co.,* 17 Minn. 153 (127).

The general rule is that the state where the application is made and where the premium is paid and the policy delivered is that where the contract is entered into. *Mutual Life Ins. Co. v. Cohen,* 179 U. S. 262; *New York Life Ins. Co. v. Russell,* 77 Fed. 94; *Albro v. Manhattan Life Ins. Co.,* 119 Fed. 629; *Millard v. Brayton,* 177 Mass. 533; *Swing v. Wellington,* 44 Ind. App. 455; *Berry v. Knights Templar & M. L. I. Co.,* 46 Fed. 439; *Knights Templar & M. L. I. Co. v. Berry,* 50 Fed. 511; *Dolan v. Mutual Reserve Fund Life Ass'n,* 173 Mass. 197; *Equitable Life Assurance Society v. Winning,* 58 Fed. 541; *Fletcher v. New York Life Ins. Co.,* 13 Fed. 526; *Roberts v. Winton,* 100 Tenn. 484, 41 L. R. A. 275; *Cowen v. Equitable Life Assurance Society,* 37 Tex. Civ. App. 430, 84 S. W. 404; 1 Cooley, Briefs on Law of Insurance, 564. See exhaustive note to *Johnson v. Mutual Life Ins. Co.,* 63 L. R. A. 833 (180 Mass. 407). Haas was not bound to accept the policy or the check if the policy did not comply with his application. The insured has a right to inspect the policy to see whether it conforms in its stipulations to the terms proposed in the preliminary negotiations. If the policy conforms to the application, the contract becomes complete on delivery, but, if not, then it constitutes a mere counter proposition. 1 Cooley, Briefs on Law of Insurance, 457, 458.

The agreement in the policy that the first premium "shall be paid in advance on the delivery of this policy" requires action by both parties to the contract, payment of the premium by the insured and delivery of

the policy by the insurer, so that it is clear that the intention of both parties as to the ordinary method of paying by money or check was that the last act in the contract should be the delivery of the policy. In *McElroy v. Metropolitan Life Ins. Co.*, 84 Neb. 866, it is said: "Where the parties to an insurance contract are in different jurisdictions, the place where the last act is done which is necessary to the validity of the contract is the place where the contract is entered into." We think that the delivery of the conversion receipt, which was in effect an order to apply the money in its hands to the payment of the premiums, was equivalent to payment, so far as the locality of the transaction is concerned, and, the final act of delivery being made here, brings the case within the rule of the cases cited.

At the trial plaintiff offered in evidence certain rules and regulations governing the manner of transacting the business by the defendant's general and local agents. These rules provided that a policy, when sent to an agent for delivery, should not be delivered until the first premium was paid, and unless defendant was in good health and his occupation unchanged, and, further, that at the time of delivery the agent shall take a receipt from the insured reciting that the policy is the one for which he applied and that he has accepted the same. The introduction of these rules in evidence was objected to by the defendant, the objection sustained by the trial court, and this ruling is assigned as error.

The evidence of the assistant actuary of the defendant was taken by deposition. He testified that, when the policies were sent to the general agent who had charge of the territory, he was authorized to accept the first premium and to deliver the policy to the insured, provided that the insured was in good health at that time. The witness also testified that, when the policy was sent to the general agent through whom the application came, the agent would not have authority to deliver the policy if he knew that the applicant was not in good health, unless

the company had issued to him a binding receipt. Ob-
jections were made by defendant to the introduction of
the printed rules and of all this line of testimony, as be-
ing incompetent, irrelevant, and immaterial, and seeking
to modify the written contract. These objections were
sustained and the evidence excluded. This is complained
of by plaintiff. In the view we have taken of the facts in
evidence, we think it hardly necessary to determine
whether or not the exclusion of this evidence was erro-
neous. It could throw light on what the purpose of de-
fendant was in sending the policy to its agent for delivery
instead of to the insured, and its admission, we are in-
clined to think, would not have been improper, but we
do not so decide.

Haas died from the result of an accident on May 1,
1902. He had paid the premiums due on one policy up to
December, 1899, and to July, 1900, on the other, but failed
to pay the subsequent premiums. The plaintiff proved
that at the time of the defaults the reserve accumulated
on policy No. 775,891 was $323.29, and on No. 803,280
$238.18, which, in the case of No. 775,891, would have
carried it for its full amount between four and five years,
and, in case of policy No. 803,280, would have carried that
policy between three and four years, and until after the
death of the insured; so that there was more than enough
money in the defendant's hands to have kept these policies
in force until after after the death of Haas, unless a for-
feiture had taken place.

We have already decided in this case that the policies
contained no forfeiture clause, and there is no competent
evidence in this record to show that a forfeiture was ever
attempted to be made or declared in the lifetime of Haas.
The reserve in the company's hands was more than suffi-
cient to carry the policies until after the death of Haas,
hence, unless in his lifetime he had abandoned or sur-
rendered the contract, the liability became fixed on the
happening of that event. In *Rye v. New York Life Ins.
Co.*, 88 Neb. 707, the refusal to enforce the contract was

based in part on the fact that there was no reserve in the hands of the insurer at the time the policy matured. We find it unnecessary to consider the New York statutes and cases cited, but merely remark that, in cases where the court found the policies had not been forfeited by notice under the statutes, the views of the courts of that state, if we understand them correctly, are not inconsistent with those herein expressed.

The provisions in the policy giving options to the insured after a default in the payment of premiums on the day fixed must be considered in connection with the law as to the nature of the life insurance contract and the fact of there being no forfeiture clause in the policy. While Haas might have exercised one of these options, he did not choose to do so. He was not bound by his contract so to do, but had the right to rely upon the main and not upon the ancillary or subordinate stipulations, if it seemed best to him. We are also of opinion that the incontestable clause of the policy does not apply to the nonpayment of premiums, and that the insurance company had the right to predicate its defense upon that ground, or on that of abandonment, after the expiration of the time limited in that clause as well as before.

There remains only the question of abandonment. This is a question of fact for the jury to determine under proper instructions.

The judgment of the district court is reversed and the cause remanded.

REVERSED.

HAMER, J., not sitting.