**HUMBLE OIL AND REFINING COMPANY**

v.

**AMERICAN FIDELITY & CASUALTY CO., Inc., Lloyd's Underwriters Subscribing Policy.**

Civ. A. No. 4313.

United States District Court
E. D. Tennessee, N. D.

Oct. 26, 1962.

H. H. McCampbell, Jr., Knoxville, Tenn., for plaintiff.

John B. Rayson, S. F. Dye, Poore, Cox, Baker & McAuley, Knoxville, Tenn., for defendants.

ROBERT L. TAYLOR, Chief Judge.

This action was instituted by plaintiff, Humble Oil and Refining Company, hereafter called Humble, in behalf of itself and in behalf of Insurance Company of North America, its insurance carrier, to recover losses, suffered as a result of judgments recovered by Glenn Lilly and Clyde Rouse against plaintiff in lately pending actions in this Court, and in voluntary settlement of the claim against plaintiff of Lemmon Transport Company, Inc., a common carrier of petroleum products for damage to its property.

By stipulation, a transcript of the proceedings in the Lilly and Rouse cases has been filed in this suit. Those actions grew out of a fire which occurred on Humble's premises on Middlebrook Pike in Knox County, Tennessee on the 23rd day of August, 1958, in the course of an operation involving the loading of petroleum products in a tank truck belonging to Lemmon Transport Company, Inc., of Marion, Virginia, hereafter called Lemmon.

At the time of the occurrence of the fire, Lilly and Rouse were employed by Lemmon as truck drivers and both of them were on Humble's premises for the purpose of loading their trucks with petroleum products. Rouse was the driver of the truck involved in the loading operation at the time of the fire, and Lilly was present awaiting his turn to load his truck.

The parties have stipulated to the controlling facts of the case. The facts surrounding the fire are covered in detail in the testimony in the transcript of the proceedings in the Lilly and Rouse suits. The applicable policies of insurance in effect both upon Lemmon and upon Humble are filed. The amount of Humble's loss if it is entitled to indemnity from the defendants, is stipulated.

At the time of the fire, the defendant American Fidelity & Casualty Company, Inc., hereafter called American, had in effect an automobile liability insurance policy No. AL 100365 in which Lemmon was named as insured. The provisions of this policy were incorporated into the defendant Underwriting Members of Lloyd's, hereafter called Lloyd's, Policies Nos. K 46365 and K 46366, commonly referred to as "excess insurance policies," which have also been filed by stipulation.

The stipulation further provides that Humble called upon American to provide a defense to it of the Lilly and Rouse suits and American refused to do so. That Humble periodically, after the institution of the suits, advised American of the status thereof and advised it prior to the satisfaction of the judgments in the said suits and prior to the settlement of the claim made in behalf of Lemmon for property damage. That no formal notice of the claims or suits was given to the defendant Lloyd's, but Lloyd's was represented at the Lilly and Rouse trial and at the trial of Humble's counter-suit against Rouse and his employer, Lemmon, growing out of the damage done to Humble's property in the fire because the amounts for which Lilly and Rouse sued was in excess of the available policy limit for property damage coverage afforded Lemmon by American. Lloyd's was present through Attorney Wion because of the excess demand in the counterclaim and not because Humble had called upon Lloyd's to defend it and indemnify it by virtue of the omnibus provisions in the American policy.

The use of the truck operated by Rouse at the time of the fire was with the consent of Lemmon.

It was further stipulated that Humble's loss which it seeks to recover for itself and for the use and benefit of its insurance carrier, Insurance Company of North America, is founded upon the following facts:

(a) Lilly recovered of Humble in this Court $100,000.00, together with interest thereon at the rate of 6%, aggregating $7,326.50, including court costs, for a total of $107,326.50.

(b) Rouse recovered of Humble in this Court $50,000.00, together with interest thereon at the rate of 6%, aggregating $3,538.00, including court costs, for a total of $53,538.00.

(c) A voluntary settlement was entered into with the obligee of Lemmon on the fire loss to two tractors and tank trailers in the amount of $18,500.00.

(d) Humble and its insurance carrier's expense in defending these suits and claims was $6,712.50.

Rouse and Lilly filed claims against their employer, Lemmon, under the Workmen's Compensation Law of Virginia and were paid workmen's compensation benefits thereunder by reason of their injuries sustained at the fire.

Humble paid no premium to the defendants for the policies of insurance upon which this suit is based.

A copy of the Insurance Company of North America's Policy No. RPL 560 was filed.

The pertinent provisions of defendant American's policy are as follows:

"Item 1. Named Insured: Lemmon Transport Co., Inc.

"Item 5. (c) Use of the automobile for the purposes stated includes the loading and unloading thereof.

"INSURING AGREEMENTS

"I. Coverage A—Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * *, sustained by any person, caused by accident and arising out of the * * * use of the automobile.

"Coverage B—Property Damage Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay * * * because of injury to or destruction of property * * * caused by accident and arising out of

the * * * use of the automobile.

"III. Definition of Insured: (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and * * * any person or organization legally responsible for the use thereof, provided the actual use * * * is by the named insured * * * or with (its) permission * * *

### "EXCLUSIONS

"This policy does not apply:

"(d) under coverage A, to bodily injury to * * * any employee of the insured arising out of and in the course of * * * (2) * * * employment by the insured.

"(e) under coverage A, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation * * * or other similar law.

"(f) under coverage B, to injury or destruction of property owned or transported by the insured, or property * * * in charge of the insured * * *

### "CONDITIONS

"4. Severability of Interests—Coverages A and B:

"The term 'the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability."

Humble claims that it was an additional insured under the terms of provision III of the foregoing policy. The principal questions for determination are whether American's policy extended coverage to Humble (1) for injuries sustained by Lilly and Rouse, employees of Lemmon, by reason of what the jury found was negligence upon the part of Humble that occurred during the loading of the gasoline truck that was in the charge of Rouse and on the premises of Humble, and (2) for the amount of the settlement made by plaintiff with Lemmon by reason of the damage to the latter's property.

American's policy was delivered in the Commonwealth of Virginia. Ordinarily, the law of Virginia would govern its interpretation and application. Roberts v. Winton, 100 Tenn. 484, 45 S.W. 673, 41 L.R.A. 275; Gray v. Aetna Life Ins. Co., 178 Tenn. 88, 156 S.W.2d 391; New v. General Cas. Co. of America, D.C., 133 F.Supp. 955; Travelers Ins. Co. v. American Fidelity & Cas. Co., D.C., 164 F. Supp. 393, 396.

The fire occurred and Lilly and Rouse sustained their injuries while Rouse was in the process of either loading or preparing to load his truck with fuel. It would seem, therefore, that there was a causal connection between the injuries and the use of the truck in the loading operation by Lemmon through its employee, Rouse, within the meaning of Item 5(c) of the policy. Bituminous Cas. Corp. v. Travelers Ins. Co., D.C., 122 F. Supp. 197; Pac. Auto Ins. Co. v. Commercial Cas. Ins. Co., 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251, at page 1258.

Coverage is excluded under (d) to any employee of the insured arising out of and in the course of employment by the insured.

Humble contends that this exclusion does not apply to it because Lilly and Rouse were not its employees. In that connection, it states that under the Virginia law the exclusion does not prevent coverage to an unnamed insured who is required to pay damages to employees of the named insured.

Reference is made by counsel for Humble to the case of Lumber Mutual Cas. Ins. Co. of N. Y. v. Stukes, (C.A. 4), 164 F.2d 571, which was cited by Judge Weinman in his opinion in the case of American Fidelity & Cas. Co. v. Indemnity Ins. Co. of N. A., D.C., 195 F.Supp. 648. We do not interpret the opinion in the Lumber Mutual Company case as supporting the theory of Humble that it is covered under the American policy. That case

held that where public liability policy contains an omnibus coverage clause defining the word "insured" to include any person using the automobile with the insured's permission and contained exclusion clause to the effect that coverage did not apply to injury to an employee of insured while engaged in the employment, the exclusion clause applied to additional as well as named insured. The Court observed that "public liability policies are drawn with the express purpose of excluding injuries covered by workmen's compensation laws. One of the provisions of the policy in question excludes any obligation 'for which the insured * * * may be held liable under any workmen's compensation law.'"

Subsection (e) of the American policy excludes coverage of any obligation "for which the insured or any carrier as his insured may be held liable under any workmen's compensation" law. Lilly and Rouse were paid workmen's compensation under the Virginia law.

Ayres v. Harleysville Mutual Cas. Co., 172 Va. 383, 2 S.E.2d 303, is also cited by counsel for Humble. It was also cited in a footnote in the case of Kelly v. State Automobile Insurance Assn. (C.A. 6), 288 F.2d 734. This case grew out of another Virginia case styled Aronovitch v. Ayres (1937), 169 Va. 308, 193 S.E. 524. Aronovitch was engaged in supplying retailers with beer by truck. His firm operated five trucks upon which it carried liability insurance with Harleysville Mutual Casualty Company. Ayres recovered an unsatisfied judgment against Aronovitch and garnisheed Aronovitch and his insurance carrier, Harleysville Mutual Casualty Company. On the occasion of the accident, Scruggs was in charge of Aronovitch's truck, but was accompanied by Ayres as a relief driver. Scruggs was in general charge and under the wheel, with Ayres sitting by his side at the time of the accident. For reasons that do not appear in the opinion, the Virginia Workmen's Compensation Law did not apply, probably because Aronovitch did not employ seven persons, the minimum required by Virginia. The policy in question in the suit against the carrier contained this exclusion: "Nor shall any policy cover injury to any employee or employees of the insured while engaged in operating or caring for any of the automobiles covered by this policy." The Court found that the language was ambiguous and subject to more than one interpretation and ruled that Ayres was not excluded because Scruggs was the employee "engaged in operating or caring for" the truck and not Ayres. As to the exclusion pertaining to liability assumed or imposed on Aronovitch by any workmen's compensation law, the Court did "quite agree with the statement in the reply brief of the plaintiff: 'This exclusion was intended to cover liability under a workmen's compensation act such as we have in Virginia, any agreement or plan whereby an employer insured its employees against loss from injury, etc.'"

The language that was construed in the Ayres case is different from the language contained in the policy under consideration. The Ayres case is not authority for the proposition that the American policy covered Humble's claim under the Virginia law. The Court held that Ayres was not subject to the Workmen's Compensation Law of Virginia and was not "engaged in operating or caring for" the truck at the time of the accident and that he was not excluded from coverage under the provisions of the policy.

The exclusion clause involved in the case of State Farm Mut. Automobile Ins. Co. v. Braxton, 167 F.2d 283 (C.A. 4), reads:

"The policy does not apply: (d) Under coverage A, to bodily injury to or death of any employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance or repair of the automobile."

The Court, speaking through Judge Dobie, stated:

"It is well settled that the primary purpose of an exclusion clause in a public liability policy, such as is now

before us, is to draw a sharp line between employees, who are excluded, and members of the general public. As Judge Parker, speaking for our Court in Lumber Mutual Casualty Ins. Co. v. Stukes, 4 Cir., 164 F. 2d 571, 573, said: 'The purpose of the exclusion clause is to limit coverage to liability for injury to members of the general public and to exclude liability to employees of the insured.'

"Likewise, this policy expressly excluded 'any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law.' Flippo here, because he did not have the required number of employees, did not come under the Virginia Workmen's Compensation Act. Code 1942, § 1887(1) et seq. Had Flippo, however, been within the ambit of this Act, we feel confident that the Supreme Court of Appeals of Virginia would have held that the accident here involved would be within the purview of, and compensable under, this Act."

Further:

"Our conclusion, then, is that Braxton was here an employee of Flippo, came within the exclusion clause of the policy and the insurer's motion for a summary judgment in its favor should have been granted. * * * "

Humble contends that there are two ambiguities in the American policy. One is the meaning of the employee exclusion and the other is the meaning of the exclusion with reference to property in the care, custody or control of the insured. In each case, it asserts that the ambiguity is to be found in the meaning of the word "insured", that is, whether the word "insured" refers only to Lemmon, the named insured, or not only to the named insured, but also to those who might become additional insureds pursuant to the omnibus coverage provision as insisted by the plaintiff.

New v. General Cas. Co. of America, D.C., 133 F.Supp. 955, is cited in support of the principle that all ambiguities in a policy must be resolved against the insurer. This is a well-recognized principle in insurance law, but it is not applicable to this case for the reason that, in the opinion of this Court there is no ambiguity in the exclusion clauses as to which insured or risk is intended. The clear terms of the exclusion provisions of the American policy lead to the conclusion that Humble was not covered for the injuries to Rouse and Lilly or for damage to the trucks of Lemmon.

By exclusion (e), the policy was expressly stated not to apply to any obligation for which insured might be held liable under workmen's compensation. It was stipulated that both Rouse and Lilly were paid workmen's compensation benefits in Virginia under claims filed there for their injuries sustained in the fire. Lemmon carried a policy under the Workmen's Compensation Laws of the Commonwealth of Virginia and the claims of Rouse and Lilly made under that Act were recognized and paid.

We think the language of our Court of Appeals in the case of Kelly et al. v. State Automobile Insurance Association (C.A. 6, 1961), 288 F.2d 734, which dealt with a situation comparable to the one involved in the present case is pertinent:

"Certainly Underwood, (Lemmon) having paid for workmen's compensation insurance for the protection of its employees would not ordinarily take out liability insurance at its own expense to protect itself from any claim its employees might have against it or any *third person*. In other words, Underwood was paying for the protection of its liability insurance against claims asserted by the public, and not by its own employees." (Emphasis added.)

In our opinion, it is beyond belief that Lemmon would protect itself by workmen's compensation coverage and then pay an additional premium to protect

third parties for similar claims arising out of the latter's negligence.

Similarly, by exclusion (f), the policy renounced coverage of injury to or destruction of property owned by the insured. Humble is not suing for damage to its own property. The suit here is for the amount of its voluntary settlement it made to Lemmon for damage to the latter's trucks. Now whether Lemmon was the insured, or Humble, or both, it is clear to the Court that American's policy did not, because of the terms of exclusion (f), cover property owned by an insured. It is clear that Humble paid Lemmon for the damages arising from the former's negligence. It is equally clear that Lemmon's policy was not bought to protect itself against its own negligence, but against claims made against it by third parties sounding in tort.

A final question which is probably academic in view of our construction of the exclusion clauses is whether Humble was an additional insured under the omnibus clause in the American policy. Humble claims it was and American claims it was not. On superficial examination, the position of American in this case appears to be directly opposite to that taken by it in the recent case of American Fidelity & Casualty Co., Inc. v. Indemnity Insurance Co. of N. A. et al., 308 F.2d 697, by the Sixth Circuit in which Judge Weinman was affirmed.

The attorneys for the respective parties had much to say about the Judge Weinman decision before the Sixth Circuit opinion came down. In that case, American conceded that the Farm Bureau and Brummett, its employers, unnamed insureds, were covered under its omnibus clause. American's attorneys in this case have stated to this Court that the provisions of the policy in the Indemnity Company case are the same as the provisions in the policy in the present case. In our opinion, the two cases are distinguishable on their facts. In the American case, an employee of the "unnamed insured", the Farm Bureau, was making use of the truck. The sulfuric acid was emptied by the application of compressed air to the tank trailer, and the employee of the Farm Bureau, not Transit, had applied and at the time of the accident was in the process of applying compressed air. In the Humble case, which went to the jury, the loading had ceased. Rouse, the employee of Lemmon, not of Humble, was backing to another tank when the accident occurred. It was not the use of the truck by Humble which caused the accident.

Finally, Judge Miller, in the Indemnity Company case, supra, stated that Judge Weick, in Kelly v. State Automobile Insurance Association, C.A.6, 288 F.2d 734, pointed out that there was a sharp conflict in the authorities throughout the country on the question whether there was coverage when an employee of the named insured operated the vehicle involved in the accident, but was not the employee of the unnamed insured. As held by our Circuit in Travelers Ins. Co. v. Ohio Farmers Indem. Co., C.A.6, 262 F.2d 132, and Kelly v. State Automobile Insurance Association, supra, the use of the vehicle by an employee of the named insured prevents coverage to an unnamed insured under exclusions (d) and (e) of the policy.

The parties agree that since this is a diversity case, the law of the state governing the rights of the parties would control in the interpretation of the American policy.

But the Court has not been cited to any Virginia State court decisions passing directly on the question. It has been cited to two cases decided by the Fourth Circuit, the respective opinions having been written by Judges Parker and Dobie, in which it was held that there was no coverage to an unnamed insured by reason of the exclusion provisions in the policy. Lumber Mut. Cas. Ins. Co. v. Stukes, 4 Cir., 164 F.2d 571; State Farm Mutual Automobile Ins. Co. v. Braxton, 4 Cir., 167 F.2d 283. We think the reason given by the Fourth Circuit and the Sixth Circuit for no coverage is the bet-

ter reason and in the absence of a Virginia State court decision to the contrary, the Court holds that Humble was not covered by the American policy.

American contends that the law of Tennessee applies. If this Court is in error in holding that the Virginia law applies, the application of Tennessee law would not change its conclusions. Although Tennessee cases have not passed directly on the question involving identical provisions of an insurance policy with those involved in this case, this Court is of the opinion that the Tennessee court would give effect to the exclusion provision in the American policy. Vaughn v. Standard Surety & Casualty Company, 27 Tenn.App. 671, 184 S.W.2d 556; Clinchfield Railroad Company v. U. S. F. & G., D.C., 160 F.Supp. 337; First National Bank in Bristol v. South Carolina Insurance Co., 207 Tenn. 520, 341 S.W.2d 569.

Let an order be presented.