STATE OF SOUTH CAROLINA, EX REL. PHOENIX
MUTUAL LIFE INSURANCE COMPANY *v.* Mc-
MASTER, AS INSURANCE COMMISSIONER OF
THE STATE OF SOUTH CAROLINA.

STATE OF SOUTH CAROLINA, EX REL. SHER-
FESEE *v.* SAME.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH
CAROLINA.

Nos. 195, 196. Argued March 12, 1915.—Decided April 5, 1915.

It is within the power of the State to determine for itself the conditions
upon which a foreign corporation may do business within its limits,
so long as it does not impose upon it any conditions depriving it of
rights secured under the Federal Constitution, and the State may
even altogether exclude from doing business within its borders a
corporation not doing an interstate business so long as no rights con-
ferred by the Constitution and laws of the United States are de-
stroyed or abridged.

Where the state statute authorizes an officer of the State to license
some foreign corporations to do intrastate business under specified
conditions and to reject others, the exercise of that authority in
good faith by such officer does not amount to denial of equal pro-
tection of the law as to a corporation excluded where the action was
based upon a classification which was not so arbitrary and unreason-
able as to fall within the prohibitions of the Fourteenth Amendment.

A classification of foreign insurance corporations for the purpose of
establishing conditions under which they will be licensed to do busi-
ness within the State based on the amount of their investments in
state securities is not so arbitrary as to amount to a denial of equal
protection of the laws.

The action of the Insurance Commissioner of South Carolina, in re-
quiring foreign insurance corporations having less than a certain
proportionate amount of investments in state securities to make
deposits while those having that amount might give surety bonds
is not an arbitrary classification amounting to denial of equal pro-
tection of the law.

Where the state court has sustained the action of a state officer as being within his statutory authority, this court is not concerned with that question; the only question before it is whether the conduct of state authority transgresses the provisions of the Federal Constitution.

94 S. Car. 379, and 382, affirmed.

The facts are stated in the opinion.

*Mr. T. Moultrie Mordecai* for plaintiffs in error:

The Insurance Commissioner has gone beyond the scope of the act from which he derived his power, and has arbitrarily discriminated between the insurance companies in the same class. His action is not sanctioned by the laws of the State, but constitutes a deprivation of the property of this plaintiff in error without due process of law, and a denial to it of the equal protection of the law within the meaning of the Fourteenth Amendment.

For definition of approved bonds, see Century Dictionary, Anderson's Law Dictionary, *sub* bonds and securities.

Classification, in its very definition, implies equality of the individuals of each class. Discrimination between individuals of the same class is a denial of the equal protection of the laws, and a deprivation of property without due process of law. The same means and methods should be applied impartially to all the constituents of each class, and no greater burdens shall be laid upon one than are laid upon another in the same calling. *Leeper* v. *Texas,* 139 U. S. 462; *Kentucky R. R. Tax Cases,* 115 U. S. 337; *Barbier* v. *Connolly,* 113 U. S. 27; *Bell's Gap R. R.* v. *Pennsylvania,* 134 U. S. 228; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Moore* v. *Missouri,* 159 U. S. 678; *Florida &c. Ry.* v. *Reynolds,* 183 U. S. 471; *Mobile & O. Ry.* v. *Tennessee,* 153 U. S. 486; *Adams Exp. Co.* v. *Ohio,* 165 U. S. 194; *Mich. Cent. R. R.* v. *Powers,* 201 U. S. 245; *S. W. Oil Co.* v. *Texas,* 217 U. S. 114; *Citizens' Tel. Co.* v. *Fuller,* 229 U. S. 332; *Magown* v. *Bank,* 170

U. S. 283; *Giozza* v. *Tiernan*, 148 U. S. 657; *Cotting* v. *Kansas City*, 183 U. S. 79; *Insurance Co.* v. *Mettler*, 185 U. S. 308; *Field* v. *Asphalt Co.*, 194 U. S. 618; *American Sugar Co.* v. *Louisiana*, 179 U. S. 89; *Pacific Exp. Co.* v. *Seibert*, 142 U. S. 334; *Penn. Ins. Co.* v. *New York*, 134 U. S. 594; *Quong Wing* v. *Kirkendall*, 223 U. S. 59.

The very idea of classification is that of inequality. *A., T. & S. F. Ry.* v. *Matthews*, 174 U. S. 96.

A classification between individuals otherwise having resemblances must be based upon reason and sound justice, and the power if so given cannot be arbitrarily exercised. *International Harvester Co.* v. *Missouri*, 234 U. S. 199; *Raymond* v. *Chicago Traction Co.*, 207 U. S. 20.

The action of the commission in refusing the bonds of plaintiff in error, was discrimination of the most arbitrary nature, and a clear invasion of the right of the plaintiff to the equal protection of the laws as secured by the Fourteenth Amendment. He has not only undertaken to disregard the plain language of the statute, in regard to classification of the various kinds of insurance companies, and to impose most arbitrary and unequal terms upon individuals of the same class, but he has taken upon himself to go further, and to say that the very terms which he himself has imposed may or may not be insisted upon, as he may see fit.

The principle involved in *Raymond* v. *Chicago Traction Co.*, 207 U. S. 20, is the same as in this case; the result is not the imposition of an unjust burden upon the existence of plaintiff in error in the State of South Carolina, but the very destruction of that existence.

*Mr. F. H. Dominick* for defendant in error:

The insurance business cannot be carried on in a State by a foreign corporation without complying with all the conditions imposed by the legislation of that State. *Bank of Augusta* v. *Earle*, 38 U. S. 519; *Paul* v. *Virginia*,

75 U. S. 168; *Liverpool Ins. Co.* v. *Massachusetts*, 77 U. S. 566; *Cooper Mfg. Co.* v. *Ferguson*, 113 U. S. 727; *Philadelphia Fire Assn.* v. *New York*, 119 U. S. 110; *LaFayette Ins. Co.* v. *French*, 59 U. S. 404; *Society for Savings* v. *Coite*, 73 U. S. 594; *Providence Institute* v. *Massachusetts*, 73 U. S. 611; *Hamilton Mfg. Co.* v. *Massachusetts*, 73 U. S. 632; *DuCat* v. *Chicago*, 77 U. S. 410.

Pursuant to the powers vested in the respective States, the State of South Carolina has prescribed certain conditions for the admission of foreign insurance corporations into the State of South Carolina and certain conditions to be complied with by such companies before receiving an annual license to do business within the State of South Carolina. Some of these conditions are prescribed by statute; others are placed within the discretion of the duly appointed agents and officers of the State.

The act of 1912 referred to, gives any party full power of appeal to the Supreme Court of South Carolina if he feels aggrieved by the decision of the Insurance Commissioner.

In this case plaintiff in error has had full and free access to the courts of the State of South Carolina and has had full advantage of the process of such courts provided by law in such cases. *Davidson* v. *New Orleans*, 96 U. S. 97; *Hagar* v. *Reclamation District*, 111 U. S. 701; *Kentucky Railroad Rate Tax Cases*, 115 U. S. 337.

All life insurance companies were placed in the same class by the Insurance Commissioner. Those who had certain investments, to wit: Investments in South Carolina securities, were permitted, in the discretion of the Commissioner, to deposit a surety bond if they saw fit. Those who did not have certain investments in South Carolina securities were, within the discretion of the Insurance Commissioner, required to deposit securities instead of bonds in surety companies.

Petitioner did not offer to deposit with the Insurance

Commissioner any securities whatever, nor to comply with the said ruling in any manner; but, in effect attempted to exercise its own discretion by insisting that the Insurance Commissioner accept the bond which was tendered. Under these circumstances the petitioner is not in a position to raise this question, as it has failed to show that said ruling was prejudicial to its rights.

MR. JUSTICE DAY delivered the opinion of the court.

These cases involve the same questions, and, being practically one proceeding, may be disposed of together. They arise out of an application to the Supreme Court of the State of South Carolina for a writ of mandamus, requiring the respondent, Fitz. H. McMaster, as Insurance Commissioner of the State of South Carolina, to issue to the Phoenix Mutual Life Insurance Company, a corporation of the State of Connecticut (hereinafter called the Phoenix Company), a license to do business in South Carolina as a life insurance company for the year beginning April 1st, 1912. The Supreme Court of the State refused to issue the writ (94 S. Car. 379, 382), and the case is brought here, because of alleged deprivation of rights under the Fourteenth Amendment to the Federal Constitution.

By the act of March 8, 1910, § 13, 26 Statutes at Large (South Carolina), 774, it was provided:

"Before licensing any insurance company to do business in this State, the Insurance Commissioner shall require each such company to deposit with him an approved bond or approved securities, in the discretion of the Commissioner, as follows: Each legal reserve life insurance company, twenty thousand dollars; each fire, accident, or casualty or surety insurance company, or any company not herein specified, ten thousand dollars: Provided, That domestic industrial insurance companies shall in no case

be required to deposit more than the legal reserve on their policies, but not less than one thousand dollars, which said deposit may be made at the rate of five hundred dollars a year, on April 1st of each year, until the whole be deposited; each domestic mutual life insurance company doing business on a recognized table of mortality with interest assumption not higher than four per centum per annum, not less than three thousand dollars. But each such domestic company shall keep on deposit with the Insurance Commissioner at all times, not less than the legal reserve on all of its outstanding policies: Provided, Further, That the terms of this Section shall not apply to domestic mutual assessment companies not doing business in more than two adjoining counties. If a bond be given, it shall be conditioned to pay any judgment entered up against any such company in any court of competent jurisdiction in this State, and such judgment shall be a lien upon the bond or securities. In case a bond is given, the judgment creditor shall have the right to bring suit on said bond for the satisfaction of the judgment in the county in which the judgment is received."

Under authority of this act, the Insurance Commissioner notified insurance companies that, exercising a discretion reposed in him to require such companies to make deposits with the Insurance Commissioner or accept a surety bond, beginning April 1, 1912, companies which had not invested at least one-fourth of their reserve in South Carolina in securities named in the act of 1910, would be required to deposit South Carolina securities with the Department. From such companies no surety bond would be accepted. From companies which had invested at least one-fourth of their reserve on South Carolina policies in securities of that State, a surety bond would be accepted. The letter also stated that the Department would receive on deposit South Carolina state, county, or municipal bonds; first mortgage bonds of real estate in the State;

first mortgage bonds of solvent domestic corporations, whose property was situate entirely within the State; or time certificates of deposit in banks of the State.

The Phoenix Company applied for a license for the year beginning April 1, 1912, and inclosed its check for the license fee and a surety bond in the sum of $20,000. The Insurance Commissioner refused the license, and declined to issue the same unless the Phoenix Company would make a deposit with him of securities acceptable to him, in the sum of $20,000, in bonds of the State of South Carolina, of any county, state or town of the State of South Carolina, or first mortgage bonds on real estate in the State of South Carolina, or first mortgage bonds of solvent domestic corporations, whose property was situated entirely within that State, or any property situated in that State and taxable therein, or time certificates of deposit in banks of that State.

Afterwards the Commissioner notified the surety company that he would not accept a bond from the Phoenix Company unless the latter would furnish him with an affidavit showing that at least one-fourth of its reserve on South Carolina policies had been invested in the securities named in the act of 1910. The Insurance Company declined to make such affidavit, or to make such investments, on the ground that the same was not required by any law of the State of South Carolina. It is the contention of the Insurance Company that the action of the Commissioner in undertaking to exact from it as a condition of receiving a license the investment of at least one-fourth of its reserves in the securities as required by the Commissioner, and in accepting from other insurance companies, which had complied with the requirement of the Commissioner, the bond of a surety company, and issuing to them a license, was discriminatory. And the Phoenix Company particularly insisted that the action of the Commissioner in licensing the Mutual Benefit

Life Insurance Company of New Jersey on giving a
surety company bond, without that company having in-
vested 25 per cent. of its reserve in securities demanded
by the Commissioner, discriminated against the plaintiff
in error, which action, it was contended, deprived the
company of its property without due process of law, and
violated the equal protection clause of the Fourteenth
Amendment to the Constitution of the United States.

The Supreme Court of the State of South Carolina put
its decision denying the writ on the ground that the pe-
titioner had failed to deposit with the Insurance Com-
missioner any securities, or to comply with the law and
the ruling of the Commissioner, and that it stood in no
position to raise the question involved; and dealing with
the equal protection of the law, the court held that the
Commissioner, under the act of 1910, was given broad
authority to examine into the safety and solvency of
applicants for the privilege of doing business within the
State, with reference to their dealings and the conduct of
their business; that the statute gave him authority to
determine whether the applicant had the necessary quali-
fications for doing business within the State; and that the
Commissioner had the right to determine whether the
particular applicant should deposit bond or securities.
In this way only could the discretionary power conferred
upon the Commissionerer be exercised, and the court
therefore concluded that there was no denial of the equal
protection of the laws.

The case is presented here only in its aspect of depriva-
tion of alleged rights secured by the Federal Constitution.
We fail to see any substantial merit in the contention that
the applicant has been deprived of due process of law
in the exercise of the discretion given to the Commissioner
to accept or reject applicants for the insurance privilege
under the laws of the State, and in requiring some to
give bonds and others to deposit securities, after having

investigated their condition and methods of doing business.

The main contention, pressed in argument, and upon which the reversal of the judgment of the Supreme Court of South Carolina is contended for, is based upon the equal protection clause of the Fourteenth Amendment, because of the alleged discriminatory action of the Commissioner in dealing with different insurance companies, and particularly with the case of the Mutual Benefit Life Insurance Company of New Jersey. An inspection of the record, however, shows a different condition of facts with reference to that company from that shown as to the Phoenix Company. While it is true that both are life insurance companies, and doubtless solvent and sound in their business methods, and while it appears that the Mutual Benefit Life Insurance Company did not have, actually invested in South Carolina securities, one-fourth of its reserve on South Carolina policies, it did have, on April 1, 1912, real estate mortgage loans in the State, duly approved, and awaiting investment, considerably in excess of one-fourth of its reserve on South Carolina policies; while the Phoenix Company, out of its reserve on South Carolina policies of $375,000, had only $10,350 of investments in the form of South Carolina securities, and did not indicate any purpose or intention of acquiring more.

Furthermore, the Phoenix Company is a foreign corporation, whose license to do business in the State of South Carolina would expire upon the first day of April, 1912, and, therefore, it was within the power of the State, so long as it did not impose upon the company as a condition of doing business within the State any deprivation of rights secured to it under the Federal Constitution, to determine for itself the conditions upon which such foreign corporation could do business within the State. This principle has been often affirmed by the decisions of this court, and the Insurance Company, being within that

class of companies not doing an interstate business, the State might, in the exercise of its lawful authority, exclude it from doing business within the State, so long as no rights conferred by the Constitution and laws of the United States were destroyed or abridged. See *Harrison* v. *St. Louis & San Francisco R. R.*, 232 U. S. 318, 332, 333, and cases in this court therein cited.

Assuming, without deciding, that the Phoenix Company occupied such attitude in the State of South Carolina as to entitle it to claim the benefit of the equal protection clause of the Fourteenth Amendment, we are of opinion that upon this record no such facts are shown as would lead to the conclusion that the action of the Insurance Commissioner in this case amounted to a deprivation of the equal protection of the law. The state court put its decision, as we have seen, upon the ground that under the authority given in the statute to the Insurance Commissioner to license one company and reject another, the exercise of such statutory authority in good faith would not make his action in any given case obnoxious to the protection of the rule of equality prescribed by the Constitution.

The equal protection of the laws, as this court has frequently decided, means subjection to equal laws applying alike to all in the same situation, or as expressed by Mr. Justice Field, speaking for this court in *Barbier* v. *Connolly*, 113 U. S. 27, 31,—a case much relied upon by the plaintiffs in error,—equal protection of laws means "that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances, in the enjoyment of their personal and civil rights. . . . That no greater burdens should be laid upon any one than are laid upon others in the same calling and condition." In this general definition, the court recognizes, as it always has, that what

the equal protection of the law requires is equality of burdens upon those in like situation or condition. It has always been held consistent with this general requirement to permit the States to classify the subjects of legislation, and make differences of regulation where substantial differences of condition exist.

In this case, where the Insurance Commissioner was under examination concerning the differences between the treatment of the Mutual Benefit Life Insurance Company and the Phoenix Company, after speaking of the action of the Mutual Benefit Company in making large loans in the State of South Carolina, when inquired of as to whether approved loans of the Mutual Benefit Company would bring property into the State of South Carolina, against which local policy holders could enforce their claims, the Commissioner answered that it was not a question of added safety, but to have within the State of South Carolina actual things that could be levied upon in case of suit. These large loans of the Mutual Benefit Company within the State of South Carolina would not only bring property into that State, which might be reached through the local courts, but would evidence a purpose in the Company to remain in the State in a permanent way,—a fact which was entitled to significance in determining the matter of licensing the Company to do business.

The Supreme Court of South Carolina has sustained the Act as giving authority, so far as the State is concerned, to the Insurance Commissioner to take the action which he did concerning the withholding of a license to the Phoenix Company and the granting of licenses to other companies, notably the Mutual Benefit Life Insurance Company of New Jersey. We are only concerned with the question whether this conduct of the state authority was so arbitrary and discriminatory in its character as to amount to a deprivation of the equal protection of the

laws, within the meaning of the Federal Constitution. We think the action here challenged was based upon real and substantial differences, and was not that merely arbitrary classification which this court has condemned because of the Fourteenth Amendment.

We find no error in the judgment of the Supreme Court of the State of South Carolina, and the same is

*Affirmed.*