## METROPOLITAN CASUALTY INS. CO. OF NEW YORK v. BROWNELL.

### No. 4969.

Circuit Court of Appeals, Seventh Circuit.

Jan. 12, 1934.

Rehearing Denied Feb. 28, 1934.

James W. Noel, Hubert Hickam, Alan W. Boyd, and Robert D. Armstrong, all of Indianapolis, Ind., for appellant.

Charles D. Hunt, of Sullivan, Ind., and Samuel D. Miller and Sidney S. Miller, both of Indianapolis, Ind., for appellee.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

This action was brought upon a bond, executed by appellant, whereby it agreed to indemnify the People's National Bank & Trust Company to the extent of $5,000 for losses occurring by reason of the dishonesty of any employee, to recover the full penalty of the bond for losses alleged to have occurred by reason of the dishonesty of the cashier of said bank. Appellant demurred to the amended complaint, which demurrer was overruled, and it thereupon filed an answer, to which a demurrer of appellee was sustained. Appellant elected to stand upon its pleadings and refused to plead further, and the court thereupon entered a judgment for appellee for the full penalty of said bond with interest, from which judgment this appeal is taken. The errors relied on arise out of the rulings of the court on the demurrer to the amended complaint and the demurrer to the answer, to each of which rulings the appellant duly excepted.

The amended complaint alleges in substance that on or about the 12th day of March, 1927, the appellant, in consideration of an annual premium, executed the bond in question, by the terms of which it agreed to indemnify the People's National Bank & Trust Company, of which appellee is receiver, to the extent of $5,000 for any losses resulting from the dishonesty of any employee of said bank. Said bond remained in force until December 15, 1928, at which time it was canceled by the bank. During the years 1927 and 1928 while the bond was in force, losses are alleged to have occurred through the dishonesty of one Edgar D. Maple, cashier, in receiving notes, from the president of another bank, which he knew to be forged and for which he gave full credit on the books of the bank. The losses for each year exceeded the penalty of the bond. The 1927 losses were eliminated from the amended complaint by a motion to strike out all allegations with reference to such losses, which was sustained. The losses for the year 1928 are alleged to have been discovered within a few days subsequent to January 16, 1929. It is further alleged that within fifteen days thereafter the bank notified appellant of the loss and within four months thereafter, on April 12, 1929, furnished appellant due proof of loss in accordance with the terms of the bond.

The bond sued on contains, among others, the following provisions:

·"Time for Investigation. by the Underwriter.

"(6) That the Underwriter shall have two (2) months after presentation of sworn statement of claim within which to verify same by appropriate investigation, during which time no legal proceedings shall be brought against the Underwriter as to that claim, nor may such proceedings be brought at all as to that claim after the expiration of fifteen (15) months from the date of its presentation."

This action was commenced January 15, 1932, more than fifteen months, and almost three years, after the presentation of the claim.

Appellant contends the action was not commenced within the time limited by the terms of the bond. Appellee contends, and the court held, that said provision requiring the commencement of the action within fifteen months after the presentation of the claim is rendered invalid by section 9139, Burns' Ann. St. 1926 (Acts 1865, Sp. Sess., p. 105), of the statutes of Indiana, providing as follows: "9139. (4803.) *Conditions forbidden.*—6. No such insurance company shall insert any condition in any policy hereafter issued requiring the insured to give notice forthwith, or within the (a) period of time less than five days of the loss of the insured property; * * * and any provision or condition contrary to the provisions of this section, or any condition in said policy inserted to avoid the provisions of this section, shall be void, and *no condition or agreement not to sue for a period of less than three years shall be valid."*

As construed by the Supreme Court of Indiana, this statute purports to render invalid any provision in a policy of insurance issued by a company of another state doing business in Indiana restricting the time for commencing action to a period shorter than three years. No such restriction is imposed upon insurance companies organized under the laws of Indiana. It is appellant's contention that this statute so construed, applying only to foreign corporations, denies to such corporations the equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States; that it is consequently invalid and cannot destroy the validity of the limitation in the bond. The question is presented by the ruling of the District Court overruling appellant's demurrer to the amended complaint and sustaining appellee's demurrer to the answer which affirmatively sets up the provisions of the bond

and the invalidity of the Indiana statute in question.

The sole question presented by this record is whether or not section 9139, Burns' Ann. Stat. of Indiana, is a valid enactment, in the light of the Fourteenth Amendment to the Constitution of the United States.

The section of Burns' Annotated Indiana Statutes, the validity of which is being attacked in this case, was passed by the Legislature of Indiana in 1865, before the Fourteenth Amendment to the Constitution of the United States was adopted. It has been upheld as a valid exercise of legislative discretion by the Supreme Court of Indiana as affecting foreign insurance companies. American Surety Co. v. Pangburn, 182 Ind. 116, 119, 105 N. E. 769, Ann. Cas. 1916E, 1126; Caywood v. Supreme Lodge, etc., 171 Ind. 410, 86 N. E. 482, 23 L. R. A. (N. S.) 304, 131 Am. St. Rep. 253, 17 Ann. Cas. 503.

Another statute (Burns' Ann. St. 1926, § 9037) prohibits a life insurance company from incorporating a provision in a policy limiting the time within which any action at law or equity may be commenced to less than three years after the cause of action shall accrue, and this provision has also been held valid by the Supreme Court of Indiana. Insurance Co. v. Brim, 111 Ind. 281, 12 N. E. 315; Caywood v. Supreme Lodge, etc., supra.

■ The writing of an insurance contract is not a transaction in commerce, nor is the insurance contract an article of commerce, but merely a simple contract of indemnity. Paul v. Virginia, 8 Wall. 168, 181, 19 L. Ed. 357; New York Life Ins. Co. v. Deer Lodge County, 231 U. S. 495, 502, 34 S. Ct. 167, 58 L. Ed. 332; National, etc., Ins. Co. v. Wanberg, 260 U. S. 71, 75, 43 S. Ct. 32, 67 L. Ed. 136.

■ The state of Indiana had the power to determine for itself the conditions upon which foreign insurance companies should be admitted to transact business in that state. It could have excluded them entirely, but permitting them to come into the state, it could determine upon what conditions they could· transact business and make contracts, provided such conditions do not deprive such corporations of rights conferred upon them by the Constitution and laws of the United States.

In discussing this act, in Insurance Co. of North America v. Brim, 111 Ind. 281, 12 N. E. 315, 318, the Supreme Court of Indiana said: "While the general proposition may

be conceded that insurance companies have the right to contract that parties shall assert their claims against them in a reasonable time (Riddlesbarger v. Hartford Ins. Co., 7 Wall. 386 [19 L. Ed. 257]), yet the constitutional right of the Legislature to prescribe the terms upon which foreign corporations may transact business within the state is also abundantly established. * * *

"The statute must be regarded as a legislative declaration that less than three years is an unreasonable limit within which to require parties holding claims under a policy of foreign insurance to assert their claims, or to be forever barred. This statute was in force when the contract of insurance was consummated, and it must be conclusively presumed that the contract was made with a due regard for the law. In so far as the statute and the condition in the policy are in conflict, the statute must prevail. It is said the statute is unconstitutional. Counsel have not called our attention to any provision of the constitution which is supposed to be infringed, and we know of none."

The Fourteenth Amendment to the Constitution of the United States provides: " " : " No State shall * " * deny to any person within its jurisdiction the equal protection of the laws."

"Equal protection of the laws" means subjection to equal laws applying to all alike in the same situation, and it has consistently been held that states have the right to classify the subjects of legislation and make differences in regulations where substantial differences of condition exist. State of South Carolina ex rel. Phœnix Ins. Co. v. McMaster, 237 U. S. 63, 71, 35 S. Ct. 504, 506, 59 L. Ed. 839; Fort Smith Light Co. v. Paving District, 274 U. S. 387, 47 S. Ct. 595, 71 L. Ed. 1112; Power Mfg. Co. v. Saunders, 274 U. S. 490, 47 S. Ct. 678, 71 L. Ed. 1165.

Mr. Justice Day, speaking for the Supreme Court in State of South Carolina ex rel. Phœnix Ins. Co. v. McMaster, supra, used this language: " * * * It was within the power of the state, so long as it did not impose upon the company as a condition of doing business within the state any deprivation of rights secured to it under the Federal Constitution, to determine for itself the conditions upon which such foreign corporation could do business within the state. This principle has been often affirmed by the decisions of this court, and the insurance company, being within that class of companies not doing an interstate business, the state might, in the exercise of its lawful authority, exclude it from doing business within the state, so long as no rights conferred by the Constitution and laws of the United States were destroyed or abridged."

In the same case, in discussing "equal protection of the laws," the court said: "The equal protection of the laws, as this court has frequently decided, means subjection to equal laws applying alike to all in the same situation, or, as expressed by Mr. Justice Field, speaking for this court in Barbier v. Connolly, 113 U. S. 27, 31, 5 S. Ct. 357, 28 L. Ed. 923, 924—a case much relied upon by the plaintiffs in error—equal protection of laws means 'that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances, in the enjoyment of their personal and civil rights. * * * That no greater burdens should be laid upon any one than are laid upon others in the same calling and condition.' In this general definition, the court recognizes, as it always has, that what the equal protection of the law requires is equality of burdens upon those in like situation or condition. It has always been held consistent with this general requirement to permit the states to classify the subjects of legislation, and make differences of regulation where substantial differences of condition exist."

The difference between a domestic insurance company and a foreign one is certainly substantial, and the only contention of appellant here is that the statute is void because it does not give to it the same rights and privileges that are given to insurance corporations created by the state of Indiana.

In discussing the power of the state to regulate and restrict the operations of a foreign insurance company, Mr. Justice Field, in Paul v. Virginia, supra, said: "If, on the other hand, the provision of the Constitution could be construed to secure to citizens of each State in other States the peculiar privileges conferred by their laws, an extraterritorial operation would be given to local legislation utterly destructive of the independence and the harmony of the States * * *, and if * * * * their corporate powers and franchises could be exercised in other States without restriction, it is easy to see that, with the advantages thus possessed, the most important business of those States would soon pass into their hands. The principal business of every State would, in fact, be controlled by corporations created by other States."

The statute in question having been enacted prior to the ratification of the Fourteenth Amendment and having remained a part of the public policy of Indiana until now, it cannot be even suggested that the Legislature had any design upon nullification of the Fourteenth Amendment, but was attempting to establish a public policy for the state. We cannot say that when the Legislature provided one set of regulations to control domestic insurance companies and another to control foreign insurance companies, the latter provisions applying uniformly to all corporations within the class, was arbitrary; but, upon the contrary, it was based on a real and substantial difference, having a reasonable relation to the subject of the particular legislation. Power Mfg. Co. v. Saunders, 274 U. S. 490, 47 S. Ct. 678, 71 L. Ed. 1165.

The judgment of the District Court is affirmed.