## NEW YORK LIFE INSURANCE COMPANY *v.* DODGE.

ERROR TO THE SPRINGFIELD COURT OF APPEALS OF THE STATE OF MISSOURI.

No. 378. Argued January 21, 1918.—Decided April 1, 1918.

A law of a State, governing a life insurance contract made locally between a resident citizen and a locally licensed foreign corporation, and prescribing how the net value of the policy shall be applied to avoid forfeiture if the premium be not paid, cannot be extended so as to prevent the policyholder, while present in such State, and the company from making and carrying out a subsequent, independent agreement in the company's home State, pursuant to its laws, whereby the policy is pledged as security for a loan and afterwards canceled in satisfaction of the indebtedness.

Such attempt to engraft the law of the policy upon the subsequent contract, so that the insurance shall remain enforcible in the courts of the State where the policy was issued without regard to its termination in satisfaction of the loan, is an invasion of the citizen's liberty of contract under the Fourteenth Amendment, and cannot be sustained through the license to the foreign corporation.

A life insurance policy, issued in Missouri to a resident and citizen of Missouri by a New York corporation with Missouri license, provided that the insured might obtain cash loans on the security of the policy on application at the company's home office, subject to the terms of its loan agreement, and that any indebtedness to the company should be deducted in any settlement of the policy or of any benefit thereunder. *Held*, that this imposed no obligation on the company to make a loan subject to a Missouri nonforfeiture law governing the policy and devoting three-fourths of its net value to satisfaction of premium indebtedness exclusively and extension of the insurance, in case of default.

Upon application, based on such a policy, addressed to the company at New York, accompanied by a loan agreement, both signed by the insured and beneficiary in Missouri, where both were resident citizens, and forwarded, with pledge of the policy as security, through the company's Missouri agent, and all received and accepted at its home office in New York, a loan was made, the amount being remitted by mail to the insured in Missouri in the form of the company's check on a New York bank payable to his order. The agreement declared, in substance, that it was made and to be performed entirely in New York under New York laws. Under it, in accordance with those laws, the pledge was foreclosed and the reserve of the policy extinguished in satisfying the loan. *Held*, that the agreement was a valid New York contract, independent of the policy, and that the foreclosure was a defense to an action on the policy in the courts of Missouri, notwithstanding a Missouri nonforfeiture statute (Rev. Stats. ¹899, § 7897), devoting three-fourths of the net value to payment of premium indebtedness exclusively and in extension of the insurance, was there construed as continuing the insurance in force.

189 S. W. Rep. 609, reversed.

THE case is stated in the opinion.

*Mr. James H. McIntosh*, with whom *Mr. James . C. Jones* was on the brief, for plaintiff in error:

*New York Life Ins. Co.* v. *Head*, 234 U. S. 149, is so much like this case as practically to be decisive of it.

We do not claim the State could not pass a valid law prohibiting a forfeiture. Such laws have been passed in many States and their validity to the extent that they prevent forfeitures has not been questioned.

Massachusetts in 1861 was the pioneer in such legislation. "The purpose of the statute," said the Massachusetts court, "is merely to establish a rule which will enable the assured to reap the full benefits of the premiums paid before default on his part." *Carter v. John Hancock Ins. Co.,* 127 Massachusetts, 153; *Hazcn v. Massachusetts Mutual,* 170 Massachusetts, 254.

Without any statute on the subject, this court has recognized the equitable rights of a policyholder who was prevented by war from paying his premiums. The reserve growing out of the premiums belongs in a sense to him who paid them. *New York Life Ins. Co. v. Statham,* 93 U. S. 24. *Cf. Board of Assessors v. New York Life Ins. Co.,* 216 U. S. 517; *s. c.,* 158 Fed. Rep. 462.

The unused balance Dodge had with the company, the State could say must not be forfeited; but the State could not, without denying the liberty of contract, prevent the parties from making whatever fair agreement they chose to make, to the end that the insured should get back this sum in so many dollars, or in its equivalent in insurance benefits, or in any other proper way. The policy was the property of the insured and the beneficiary. They had a natural right to do with it as they pleased. If they wanted to sell it, they had a right to sell it. If they wanted to borrow money and pledge it as security, they had a right to do so. The company, as a money lender, had a right to lend it on any terms that were fair, and to accept as security the pledge of the policy. And when Dodge quit paying premiums, the company had a right to settle the indebtedness in accordance with the loan agreement and the policy and the laws of New York; and Missouri could not deny them any of these rights without depriving them of their liberty of contract.

The Missouri nonforfeiture law, as extended in this case into the property in question so as not merely to prohibit its forfeiture, but to deny the right or power to

use, dispose of, or deal about it in any way whatever, and, whether the parties interested in it so wished or not, to compel the use of it in the narrow way the statute states, is clearly an arbitrary interference with the right of contract, having no just relations to the protection of the public within the scope of legislative power. *Lawton* v. *Steele*, 152 U. S. 133; *Allgeyer* v. *Louisiana*, 165 U. S. 578; *Adair* v. *United States*, 208 U. S. 161; *McLean* v. *Arkansas*, 211 U. S. 539; *Smith* v. *Texas*, 233 U. S. 630; *Alabama & New Orleans Transp. Co.* v. *Doyle*, 210 Fed. Rep. 173; *Geiger-Jones Co.* v. *Turner*, 230 Fed. Rep. 233; *People* v. *Gilson*, 109 N. Y. 389; *State* v. *Dalton*, 22 R. I. 77; *Ex parte McKenna*, 126 California, 429; *Long* v. *State*, 74 Maryland, 505.

Loans of this character and their foreclosure in the way the loan in question was foreclosed are authorized by the New York Insurance Law, § 16. The New York courts have, without any exception, sustained the validity and finality of the foreclosure of a pledge in the way it was done in this case. *Clare* v. *Mutual Life Ins. Co.*, 201 N. Y. 492; *Palmer* v. *Mutual Life Ins. Co.*, 38 Misc. (N. Y.) 318; *Hayes* v. *New York Life Ins. Co.*, 124 N. Y. Supp. 792. And similar decisions have been rendered in many jurisdictions. The foreclosure canceled the debt and the policy, and ended all contractual relations between the parties. If the loan agreement were a Missouri contract, that fact would not in any respect affect the natural right of one of the parties to borrow and the other to lend money on the pledge of this policy as security, nor would it change the character of the pledge or the necessary legal effect of the foreclosure. The pledge would be as valid and its foreclosure as final in Missouri as anywhere. *Chouteau* v. *Allen*, 70 Missouri, 290. But the agreement is a New York contract and governed by the New York law which the parties expressly adopted. *Wayman* v. *Southard*, 10 Wheat. 1, 48; *Robinson* v. *Bland*, 2 Burr. 1077; *Pritchard*

*v. Norton*, 106 U. S. 124, 136; *Liverpool Steam Co.* v. *Phenix Ins. Co.*, 129 U. S. 397; *United States* v. *North Carolina*, 136 U. S. 211; *Coghlan* v. *South Carolina R. R. Co.*, 142 U. S. 101; *Hall* v. *Cordell*, 142 U. S. 116; *Smith* v. *Mutual Benefit Life Ins. Co.*, 173 Missouri, 329.

To entertain a suit commenced in 1915 on a policy which then had no existence and which had had no existence since the foreclosure in 1907 cut off all interest of the plaintiff in it, and to render judgment against the defendant upon this nonexistent contract, is to take the defendant's property without due process of law.

The allegations of the answer, the proof of the loan, the terms of the loan agreement, the pledge of the policy, the default, the foreclosure, the satisfaction of the indebtedness and the cancellation of the policy, the legal effect of it all under the laws of New York, are not denied or disputed in this case,—they are ignored; and by ignoring them the plaintiff, without any color of right, is given this judgment.

It will not do to say that if there is any injustice here it is mere error with which this court has nothing to do. Our day in court is not due process of law. The provisions of the Constitution protecting the property of persons "extends to all acts of the State, whether through its legislative, its executive or its judicial authorities." *Scott* v. *McNeal*, 154 U. S. 34; *Chicago, Burlington & Quincy R. R. Co.* v. *Chicago*, 166 U. S. 226; *Twining* v. *New Jersey*, 211 U. S. 78; *Brand* v. *Union Elevated R. R. Co.*, 238 U. S. 586; *Ex parte Virginia*, 100 U. S. 339, 347.

The Missouri statute, as construed and applied in this case, denies the company the equal protection of the law, because it discriminates between it as a money lender on the one hand and every other money lender on the other, and deprives it of every right and of every remedy commonly accorded to a pledgee of property.

A State may exclude a foreign corporation; it may admit

it upon conditions; but it can impose no condition which will deprive the corporation of its constitutional ·rights. *Lafayette Ins. Co.* v. *French,* 18 How. 404; *Southern Pacific Co.* v. *Denton,* 146 U. S. 202; *Harrison* v. *St. Louis & San Francisco R. R. Co.,* 232 U. S. 318; *Phœnix Mutual Life Ins. Co.* v. *McMaster,* 237 U. S. 63.

As a matter of fact Missouri did not exact obedience to this nonforfeiture statute, as construed by its courts, as a condition of the company's admission to do business in the State.

Mr. *James J. O'Donohoe,* with whom Mr. *Louis H. Breuer* and Mr. *Jerre A. Costello* were on the briefs, for defendant in error:

That the policy in suit is a Missouri contract is not now a debatable proposition. And being a Missouri contract, the nonforfeiture statutes then in force entered into, and became part thereof, as much so as if copied therein. *Cravens* v. *New York Life Ins. Co.,* 148 Missouri, 583; *s. c.,* 178 U. S. 389; *Equitable Life Assurance Society* v. *Clements,* 140 U. S. 226; *Whitfield* v. *Aetna Life Ins. Co.,* 205 U. S. 489; *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557; *Lukens* v. *Insurance Co.,* 269 Missouri, 575.

*New York Life Ins. Co.* v. *Head,* 234 U. S. 149, is inapplicable. In that case the insured was not a resident of Missouri. So far as we have been able to find, there is not a case in the books in which it appears that the assured was not a resident of the State, the laws of which were being invoked in behalf of the beneficiary as against the express terms of the insurance contract itself.

All applications for loans and all loan agreements were made in Missouri to plaintiff in error's St. Louis office. Neither the insured nor defendant in error was ever in the State of New York. And the loan agreements were not subsidiary or independent contracts. *Smith* v. *Mutual Benefit Life Ins. Co.,* 173 Missouri, 329· *Burridge* v.

*Insurance Co.*, 211 Missouri, 178; *Christensen* v. *Insurance Co.*, 152 Mo. App. 551, 556; *Gillen* v. *Insurance Co.*, 178 Mo. App. 97; *McCall* v. *Insurance Co.*, 196 Mo. App. 333; *McKinney* v. *Fidelity Mutual Life Ins. Co.*, 270 Missouri, 305.   The loan was made upon no new consideration, but in pursuance of the agreement contained in the original policy, and it was not a new contract. *Dannehauser* v. *Wallenstein*, 169 N. Y. 199; *McDonnell* v. *Alabama Ins. Co.*, 85 Alabama, 412; and cases *supra.*

When the policy was issued the insurer could not make the laws of its home State applicable either by the policy, loan application or loan agreement. *Whittaker* v. *Insurance Co.*, 133 Mo. App. 664, and cases cited.   It attempted it, not by the policy stipulations but by the loan application.   This could not be done for the further reason that the application is no part of the policy, since it is neither attached to it nor indorsed thereon as required by § 7929, Mo. Rev. Stats. 1899.   *Schuler* v. *Metropolitan Life Ins. Co.*, 175 Mo. App. 130.   And for the same reasons, under the laws of New York, the application is no part of the policy.   Con. Laws of N. Y., vol. III, p. 1714, § 58; *Becker* v. *Insurance Co.*, 153 App. Div. 382; *Murphy* v. *Insurance Co.*, 83 Misc. (N. Y.) 475.   Such is the uniform rule of decision.   *Ellis* v. *Metropolitan Life Ins. Co.*, 228 Pa. St. 230; *Paulhamus* v. *Security Life & Annuity Co.*, 163 Fed. Rep. 554.   It follows, therefore, that the application should not be considered in this case. The policy stipulated that loans were to be made "on demand."   No contract therefor was necessary.   It is elemental that to become a part of the policy the company's loan agreement should be either set forth in the policy or attached thereto.

Section 7897, Mo. Rev. Stats. 1899, commands that three-fourths of the reserve value, less notes or other evidence of indebtedness given on account of past premium payments, shall be taken as a net single premium for

temporary insurance for the full amount written in the policy. No other evidence of indebtedness is deductible on policies issued from 1879 to the passage of the amendatory Act of 1903 (Laws 1903, p. 208). This statute has been held constitutional in the following cases. *Cravens* v. *New York Life Ins. Co.*, 148 Missouri, 583; *s. c.* 178 U. S. 389; *Horton* v. *Insurance Co.*, 151 Missouri, 604; *Burridge* v. *Insurance Co.*, 211 Missouri, 158. See also *Mun* v. *Insurance Co.*, 181 S. W. Rep. 609; *Turner* v. *Land & Timber Co.*, 259 Missouri, 15; *Schmidt* v. *United Order of Foresters*, 259 Missouri, 491; *Dennis* v. *Modern Brotherhood of America*, 231 Missouri, 211.

The liberty clause of the National Constitution refers to natural, not artificial, persons. *Northwestern Life Ins. Co.* v. *Riggs*, 203 U. S. 243; *Applegate* v. *Insurance Co.*, 153 Mo. App. 63.

The defenses founded on nonpayment of the loan and cancellation of the policy are, in the absence of statute, eliminated by the incontestability stipulation in the policy. *Haas* v. *Insurance Co.*, 84 Nebraska, 682; *Harris* v. *Insurance Co.*, 248 Missouri, 304.

A stipulation for forfeiting a policy as a penalty for the nonpayment of a loan, in the absence of statute, is in the nature of a usurious extortion and void. The reserve value of a policy is not its true value and it is only by statute it can be made such. Stipulations in policies and policy loan agreements intended to defeat the right of redemption are, in the absence of statute, void and inoperative to vest the absolute right and title in the pledged policy. [Citing numerous cases.]

In the absence of statute, the pledgee cannot confiscate the pledged property. Indeed he is bound to sell the pledged property and he cannot even become a purchaser at the sale. *Easton* v. *German-American Bank*, 127 U. S. 532; *Pauly* v. *State Loan & Trust Co.*, 165 U. S. 606; *Harmon* v. *National Park Bank*, 172 U. S. 644.

There is no foreclosure provision, either in the policy or loan agreement, and none should be inserted or implied. *Tetley* v. *McElmurry*, 201 Missouri 394; *McCullom* v. *Insurance Co.*, 61 Mo. App. 352; *Gruwell* v. *K. & L. of Security*, 126 Mo. App. 496.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

Defendant in error brought suit January 27, 1915, in Circuit Court, Phelps County, Missouri, upon a policy dated October 20, 1900, on life of her husband, Josiah B. Dodge, who died February 12, 1912. She alleged: That plaintiff in error, a New York corporation, had long maintained local offices and carried on the business of life insurance in Missouri, where she and her husband resided; that in 1900, at St. Louis, he applied for and received the policy, she being named as beneficiary; that premiums were paid to October 20, 1907, when the policy lapsed, having then a net value, three-fourths of which, less "indebtedness to the company given on account of past premium payments" applied as required by the Missouri nonforfeiture statute (§ 7897) sufficed to extend it beyond assured's death. Further, that upon application by assured and herself presented at St. Louis the company there made him loans amounting, October 20, 1907, to $1,350, but of this only $599.65 had been applied to premiums. She asked judgment for full amount of policy less loan, unpaid premiums, interest, etc.

Answering, the company admitted issuance of policy, but denied liability because assured borrowed of it, November 1906, at its Home Office, New York City, $1350, hypothecating the policy there as security and then failed to pay premium due October 20, 1907, whereupon in strict compliance with New York law and agreements made there the entire reserve was appropriated to sat-

isfy the loan, and all obligation ceased. The assured being duly notified offered no objection. It further set up that as the loan, pledge and foreclosure were within New York the Federal Constitution protected them against inhibition or modification by a Missouri statute; and if intended to produce such result § 7897, Rev. Stats. Mo., 1899, lacked validity.

In reply, defendant in error denied assent to alleged settlement; maintained all transactions in question took place in Missouri; and asserted validity of its applicable statutes.

The Springfield Court of Appeals affirmed a judgment for $2,233.45—amount due after deducting loan, unpaid premiums, etc. 189 S. W. Rep. 609. It declared former opinions of the state Supreme Court conclusively settled the constitutionality of § 7897 and that the reserve, after paying advances for premiums, was thereby appropriated to purchasing term insurance, notwithstanding any contrary agreement. *Burridge* v. *Insurance Co.*, 211 Missouri, 158; *Smith* v. *Mutual Benefit Life Ins. Co.*, 173 Missouri, 329. Effort to secure a review by the Supreme Court failed.

Section 7897, Rev. Stats. of Mo., 1899, in effect until amended in 1903, provides: "No policies of insurance on life hereafter issued by any life insurance company authorized to do business in this state, . . . shall, after payment upon it of three annual payments, be forfeited or become void, by reason of non-payment of premiums thereof, but it shall be subject to the following rules of commutation, to wit: The net value of the policy, when the premium becomes due, and is not paid, shall be computed . . . and after deducting from three-fourths of such net value, any notes or other evidence of indebtedness to the company, given on account of past premium payments on said policies, issued to the insured, which indebtedness shall be then canceled, the balance

shall be taken as a net single premium for temporary insurance for the full amount written in the policy;   .  :  ."
This section and number 7899 are in the margin.[1]

---

[1] "Sec. 7897.  Policies non-forfeitable, when.—No policies of insurance on life hereafter issued by any life insurance company authorized to do business in this state, on and after the first day of August, A. D. 1879, shall, after payment upon it of three annual payments, be forfeited or become void, by reason of non-payment of premiums thereof, but it shall be subject to the following rules of commutation, to wit: The net value of the policy, when the premium becomes due, and is not paid, shall be computed upon the actuaries' or combined experience table of mortality, with four per cent. interest per annum, and after deducting from three-fourths of such net value, any notes or other evidence of indebtedness to the company, given on account of past premium payments on said policies, issued to the insured, which indebtedness shall be then canceled, the balance shall be taken as a net single premium for temporary insurance for the full amount written in the policy; and the term for which said temporary insurance shall be in force shall be determined by the age of the person whose life is insured at the time of default of premium, and the assumption of mortality and interest aforesaid; but, if the policy shall be an endowment, payable at a certain time, or at death, if it should occur previously, then, if what remains as aforesaid shall exceed the net single premium of temporary insurance for the remainder of the endowment term for the full amount of the policy, such excess shall be considered as a net single premium for a pure endowment of so much as said premium will purchase, determined by the age of the insured at date of default in the payment of premiums on the original policy, and the table of mortality and interest aforesaid, which amount shall be paid at end of original term of endowment, if the insured shall then be alive." (R. S. 1889, § 5856, amended—r.) [By Act of Missouri Legislature approved March 27, 1903, this section was amended by substituting for the words "any notes or other evidence of indebtedness to the company, given on account of past premium payments on said policies, issued to the insured, which indebtedness shall be then canceled" the following ones: "any notes given on account of past premium payments on said policy issued to the insured, and any other evidence of indebtedness to the company, which notes and indebtedness shall be then canceled."]

"Sec. 7899.  Rule of payment on commuted policy.—If the death of the insured occur within the term of temporary insurance covered

Both defendant in error and her husband, the assured, at all times here material resided in Missouri. Being duly licensed by that State, plaintiff in error, responding to an application signed by Josiah B. Dodge at St. Louis, issued and delivered to him there a five thousand dollar twenty year endowment policy upon his life, dated October 20, 1900, naming his wife beneficiary but reserving the right to designate another. Among other things, it stipulated: "Cash loans can be obtained by the insured on the sole security of this policy on demand at any time after this policy has been in force two full years, if premiums have been duly paid to the anniversary of the insurance next succeeding the date when the loan is made. Application for any loan must be made in writing to the Home Office of the company, and the loan will be subject to the terms of the company's loan agreement. The amount of loan available at any time is stated below, and includes any previous loan then unpaid. Interest will be at the rate of five per cent. per annum in advance." Continuation after failure to pay premium was guaranteed, also reinstatement within five years. It further provided: "Premiums are due and payable at the Home Office,

---

by the value of the policy as determined in § 7897, and if no condition of the insurance other than the payment of premiums shall have been violated by the insured, the company shall be bound to pay the amount of the policy, the same as if there had been no default in the payment of premium, anything in the policy to the contrary notwithstanding: *Provided, however*, that notice of the claim and proof of the death shall be submitted to the company in the same manner as provided by the terms of the policy within ninety days after the decease of the insured; *and provided also*, that the company shall have the right to deduct from the amount insured in the policy the amount compounded at six per cent. interest per annum of all the premiums that had been foreborne at the time of the decease, including the whole of the year's premium in which the death occurs, but such premiums shall in no case exceed the ordinary life premium for the age at issue, with interest as last aforesaid." (R. S. 1889, § 5858—t.)

unless otherwise agreed in writing, but may be paid to an agent producing receipts signed by one of the above-named officers and countersigned by the agent. If any premium is not paid on or before the day when due, or within one month of grace, the liability of the company shall be only as hereinbefore provided for such case." "Any indebtedness to the company, including any balance of the premium for the insurance year remaining unpaid will be deducted in any settlement of this policy or of any benefit thereunder."

By an application addressed to the company at New York accompanied by a loan agreement, both signed at St. Louis and "forwarded from Missouri Clearing House branch office, August 29, 1903," together with pledge of the policy—all received and accepted at the Home Office in New York City—the assured obtained from the company a loan of $490. Its check for the proceeds drawn on a New York bank and payable to his order was sent to him at St. Louis by mail. Annually thereafter the outstanding loan was settled and a larger one negotiated—all in substantial accord with plan just described. The avails were applied partly to premiums; the balance went directly to assured by the company's check on a New York bank. Copies of last application, loan agreement and instruction which follow indicate the details of the transaction.

[Application]

Nov. 9, 1906.

New York Life Insurance Company, 346 & 348 Broadway, New York.

*Re* Policy No. 2,054,961.

Application is hereby made for a cash loan of $1,350.00 on the security of the above policy, issued by the New York Life Insurance Company on the life of Josiah B. Dodge, subject to the terms of said Company's Loan Agreement.

Said policy is forwarded herewith for deposit with said Company as collateral security, together with said Company's Loan Agreement duly signed in duplicate.

JOSIAH B. DODGE.  LEO F. DODGE.

Forwarded from Missouri Clearing House, Branch Office, Nov. 9, 1906.  M. F. BAYARD, Cashier.

[POLICY LOAN AGREEMENT.]

Pursuant to the provisions of Policy No. 2054961 issued by the New York Life Insurance Company on the life of Josiah B. Dodge, the undersigned has this day obtained a cash loan from said Company of the sum of thirteen hundred fifty dollars ($1,350 00), the receipt of which is hereby acknowledged, conditioned upon pledging as collateral said policy with said Company as sole security for said loan and giving assent to the terms of this Policy Loan Agreement; therefore,

In consideration of the premises, the undersigned hereby agree as follows:

1. To pay said Company interest on said loan at the rate of five per cent per annum, payable in advance from this date to the next anniversary of said policy, and annually in advance on said anniversary and thereafter.

2. To pledge, and do hereby pledge, said policy as sole security for the payment of said loan and interest and herewith deposit said policy with said Company at its Home Office.

3. To pay said Company said sum when due with interest, reserving, however, the right to reclaim said policy by repayment of said loan with interest at any time before due, said repayment to cancel this agreement without further action.

4. That said loan shall become due and payable—

(a) Either if any premium on said policy or any in-

terest on said loan is not paid on the date when due, in which event said pledge shall, without demand or notice of any kind, every demand and notice being hereby waived, be foreclosed by satisfying said loan in the manner provided in said policy;

(b) Or, (1) on the maturity of the policy as a death claim or an endowment; (2) on the surrender of the policy for a cash value; (3) on the selection of a discontinuing option at the end of any dividend period. In any such event the amount due on said loan shall be deducted from the sum to be paid or allowed under said policy.

5. That the application for said loan was made to said Company at its Home Office in the City of New York, was accepted, the money paid by it, and this agreement made and delivered there; that said principal and interest are payable at said Home Office, and that this contract is made under and pursuant to the laws of the State of New York, the place of said contract being said Home Office of said Company.

In witness whereof, the said parties hereto have hereunto set their hands and affixed their seals this eighth day of November, 1906.

JOSIAH B. DODGE (L. S.)    LEO F. DODGE. (L. S.)
Signed and sealed in presence of GEO. T. LEWIS.

Forwarded from Missouri Clearing House, Branch Office, Nov. 9, 1906.   M. F. BAYARD. Cashier.

[Instruction.]

Nov. 9, 1906.
New York Life Insurance Company, 346 & 348 Broadway, New York.

*Re* Policy No. 2,054,961.

Please deduct from the cash loan of $1,350.00 applied for on Nov., 1906, on the security of the above policy,

an amount sufficient to pay present loan and prem. and int. to Oct., '07.

JOSIAH B. DODGE.    LEO F. DODGE.

Witness: Geo. T. Lewis.

Forwarded from Missouri Clearing House, Branch Office, Nov. 9, 1906.  M. F. BAYARD, Cashier.

The premium due October 20, 1907, not being paid, the company applied entire reserve in discharge of insured's indebtedness as provided by laws of New York and sent him by mail the following letter.

New York, December 17th, 1907.

Mr. Josiah B. Dodge, 4952 Maryland Ave., St. Louis, Mo.

*Re* Policy No. 2054961.

DEAR SIR:  By a loan agreement executed on the 8th day of November, 1906, the above policy on the life of Josiah B. Dodge was pledged to and deposited with the New York Life Insurance Company as collateral security for a cash loan of $1350.00.

The premium and interest due on said policy on the 20th day of October, 1907, not having been paid, the principal of said loan became due and has been settled according to the terms of the policy, and the policy has no further value.

Yours truly, JOHN C. McCALL, Secretary, By E. M. C.

This was received by assured December 19, 1907, and neither he nor the beneficiary, during his life, offered objection to the action taken.

That the policy when issued to Dodge became a Missouri contract, subject to its statutes, so far as valid and applicable, is undisputed and clear.  The controlling doctrine in that regard was announced and applied in *Equitable Life Assurance Society* v. *Clements,* 140 U. S. 226; *New York Life Insurance Co.* v. *Cravens,* 178 U. S. 389, and *Northwestern Life Insurance Co.* v. *Riggs,* 203 U. S.

243. In each of those cases the controversy related to the interpretation and effect of an original policy— not a later good faith agreement between the parties. We held that to the extent there stated the State had power to control insurance contracts made within its borders. With those conclusions we are now entirely content; but they do not rule the question presently presented. Here the controversy concerns effect of the state statute upon agreements between the parties made long after date of the policy and action taken thereunder; their essential fairness and accordance with New York laws are not challenged.

Considering the circumstances recited above, we think competent parties consummated the loan contract now relied upon in New York where it was to be performed. And, moreover, that it is one of a kind which ordinarily no State by direct action may prohibit a citizen within her borders from making outside of them. It should be noted that the clause in the policy providing "cash loans can be obtained by the insured on the sole security of this policy on demand, etc.," certainly imposed no obligation upon the company to make such a loan if the Missouri statute applied and inhibited valid hypothecation of the reserve as security therefor as defendant in error maintains. She cannot, therefore, claim anything upon the theory that the loan contract actually consummated was one which the company had legally obligated itself to make upon demand.

In *Allgeyer* v. *Louisiana*, 165 U. S. 578, we held a Louisiana statute invalid which undertook to restrict the right of a citizen while within that State to place insurance upon property located there by contract made and to be performed beyond its borders. We said "the mere fact that a citizen may be within the limits of a particular State does not prevent his making a contract outside its limits while he himself remains within it," and ruled

that under the Fourteenth Amendment the right to con-
tract outside for insurance on property within a State is
one which cannot be taken away by state legislation. So
to contract is a part of the liberty guaranteed to every
citizen. The doctrine of this case has been often reaffirmed
and must be accepted as established. *Nutting* v. *Mas-
sachusetts*, 183 U. S. 553, 557; *Delamater* v. *South Dakota*,
205 U. S. 93, 102; *Provident Savings Assn.* v. *Ken-
tucky*, 239 U. S. 103, 114; *Adams* v. *Tanner*, 244 U. S.
590, 595.

The court below rested its judgment denying full effect
to the loan agreement upon *Smith* v. *Mutual Benefit Life
Ins. Co., supra*, and *Burridge* v. *Insurance Co., supra.*
In them the Supreme Court distinctly held § 7897 con-
trolling and the insurer liable upon policies actually is-
sued in Missouri notwithstanding any subsequent stip-
ulation directing different disposition of reserve after
default. In the latter it expressly approved the doc-
trine of the first and, among other things, (p. 171)
said:

"Attending to that section [No. 7897] as it read when
the policy issued and when the insured died, it will be
observed that the net value of the policy is to be computed.
Then from three-fourths of such net value there is to be
taken away—what? All indebtedness? Not at all. There
shall be taken away 'any notes or other evidence of in-
debtedness to the company, *given on account of past pre-
mium payments on said policies*.' The residue, if any,
then goes automatically to the purchase of temporary or
extended insurance  .  .  .  In that [the Smith] case,
therefore, the scope and meaning of that clause of our
non-forfeiting insurance statute was held in judgment
in the stiffest sense and this court decided that the stat-
ute was mandatory; that the *character* of the indebted-
ness to be deducted from the net value before applying
the residue to the purchase of temporary or extended in-

surance must be looked to and was limited by the clear words of the statute 'to notes or other evidences of indebtedness to the company, given on account of past premium payments' on the policy issued to the insured; and did not include notes and evidences of indebtedness arising in other ways. It is not apparent, assuming the statute be constitutional, how, giving heed to the hornbook maxim, *expressio unius,* etc., any other conclusion could have been arrived at in reason. It was held furthermore, in effect, that such provisions of law evidenced a sound and just governmental policy, and wrote into every policy of life insurance, coming within its purview, a mandate not to be abrogated in whole, or hedged about or lopped off in detail, by policy provisions, nor to be contracted away otherwise than as prescribed by statute."

Treating the loan to Dodge as made under a New York agreement which Missouri lacked power directly to control, the question presented becomes similar in principle to the one decided in *New York Life Insurance Co.* v. *Head,* 234 U. S. 149. There suit was instituted in Missouri upon a policy personally applied for and received while in that State by a citizen of New Mexico. Nine years afterwards, having duly acquired the policy in New Mexico, the transferee wrote from there to the insurer in New York and effected a loan under an agreement like the one now before us. The state courts held the policy a Missouri contract and the loan agreement controlled by its nonforfeiture statute.

Assuming the policy to be a Missouri contract, we declared that State without power to extend its authority over citizens of New Mexico and into New York and forbid the later agreement there made simply because it modified the first one. We said: "It would be impossible to permit the statutes of Missouri to operate beyond the jurisdiction of that State and in the State of New York

and there destroy freedom of contract without throwing down the constitutional barriers by which all the States are restricted within the orbits of their lawful authority and upon the preservation of which the Government under the Constitution depends." The reasoning advanced by the Missouri Supreme Court to support its ruling was thus summarized: "As foreign insurance companies have no right to come into the State and there do business except as the result of a license from the State and as the State exacts as a condition of a license that all foreign insurance companies shall be subject to the laws of the State as if they were domestic corporations, it follows that the limitations of the state law resting upon domestic corporations also rest upon foreign companies and therefore deprive them of any power which a domestic company could not enjoy, thus rendering void or inoperative any provision of their charter or condition in policies issued by them or contracts made by them inconsistent with the Missouri law." And this argument we declared unsound since the "proposition cannot be maintained without holding that because a State has power to license a foreign insurance company to do business within its borders and the authority to regulate such business, therefore a State has power to regulate the business of such company outside its borders and which would otherwise be beyond the State's authority—a distinction which brings the contention right back to the primordial conception upon which alone it would be possible to sanction the doctrine contended for, that is, that because a State has power to regulate its domestic concerns, therefore it has the right to control the domestic concerns of other States."

Under the laws of New York, where the parties made the loan agreement now before us, it was valid; also it was one which the Missouri legislature could not destroy or prevent a citizen within its borders from making

beyond them by direct inhibition; and applying the principles accepted and enforced in *New York Life Insurance Co. v. Head,* we think the necessary conclusion is that such a contract could not be indirectly brought into subjection to statutes of the State and rendered ineffective through a license authorizing the insurance company there to do business. As construed and applied by the Springfield Court of Appeals, § 7897 transcends the power of the State. To hold otherwise would permit destruction of the right—often of great value—freely to borrow money upon a policy from the issuing company at its home office and would, moreover, sanction the impairment of that liberty of contract guaranteed to all by the Fourteenth Amendment.

*Reversed.*

MR. JUSTICE BRANDEIS, dissenting.

A statute of Missouri, Rev. Stats., 1899, § 7897, prohibited life insurance companies authorized to do business within the State from forfeiting a policy for default in the payment of premiums, if three full years' premiums had been paid thereon. The act provided further that in case of such default the policy should be automatically extended and commuted into paid-up term insurance. And it determined mathematically the length of the term, as that for which insurance could, at a rate prescribed, be purchased with a single premium equal in amount to three-fourths of the reserve or net value less any indebtedness to the company "on account of past premium payments." The obligation imposed upon the company by this statute, as construed by the highest court of the State, could not be modified by contract with the insured whether entered into at the time the policy was written or subsequently. *Equitable Life Assurance Society v. Clements,* 140 U. S. 226; *Smith v. Mutual Benefit Life Insurance Co.,* 173 Missouri, 329. Such nonforfeiture laws are an exercise

of the police power; and, as insurance is not interstate commerce, the State's power in this respect is as great over foreign as over domestic corporations. *Orient Insurance Co.* v. *Daggs,* 172 U. S. 557, 566; *New York Life Insurance Co.* v. *Cravens,* 178 U. S. 389, 401; *Northwestern Life Insurance Co.* v. *Riggs,* 203 U. S. 243.

In 1900 Dodge, a citizen and resident of Missouri, applied in that State to the New York Life Insurance Company, a New York corporation, for a policy on his life in favor of his wife. The policy was delivered to the assured in Missouri where the company had an office and was authorized by the Missouri statute to do business; and there the first and later premiums were paid and, until his death, Dodge and the beneficiary lived and the company continued so to do business.

In 1906 Dodge entered into a supplemental agreement with the company by which he nominally borrowed $1,350, pledged his policy as collateral, and agreed that, in case of default in repaying the loan, the company might discharge it by applying thereto the reserve of the policy. In 1907 Dodge made default in payment both of the premium and of the loan. The reserve of the policy was then less than the amount due on the whole loan; but three-fourths of the reserve exceeded that part of the loan which had been applied to the payment of past premiums by $275.79. This excess, if applied in commutation for term insurance, would have extended the policy to December 23, 1912. The company claimed the right to use the whole of the reserve to satisfy the whole of the loan, so applied it, and notified the assured, on December 17, 1907, that its obligation on the policy ceased. Dodge died February 12, 1912. The beneficiary, insisting that by reason of the Missouri statute the policy was still in force when her husband died, brought suit thereon in a state court of Missouri and recovered judgment, which was affirmed by the Springfield Court of Appeals (189

S. W. Rep. 609); and the Supreme Court of the State refused a review.   The case comes here on writ of error under § 237 of the Judicial Code.   The company asserts that the loan agreement was made in New York; and, relying upon *New York Life Insurance Co.* v. *Head*, 234 U. S. 149, contends that the state court, in denying full effect to that contract, deprived it of liberty, property, and equal protection of the laws in violation of the Fourteenth Amendment.

*First:*   Was the loan agreement in fact made in New York?

The policy was confessedly a Missouri contract.   Dodge, so far as appears, was never out of Missouri.   Physically every act done by Dodge and the beneficiary in connection with the loan agreement, as with the policy, was done in Missouri: (a) They signed there the application for the loan; (b) they signed there the loan agreement; (c) they signed there the request upon the company to pay itself, out of the $1,350 nominally borrowed, the amount of an earlier loan with interest to October, 1907, and of the premium; (d) he delivered there (at the Missouri Clearing House Branch Office) the policy given as collateral and these three papers, which were forwarded by that office November 9, 1906, and received in New York three days later; (e) he paid there the balance of the premium, $116.40 in cash; for the sum of $1,350, nominally advanced then, was insufficient to pay off the then existing loan with interest and the accrued premium.   Throughout these transactions the company was authorized to do business in Missouri and was, in these transactions, actually doing business there.   *International Harvester Co.* v. *Kentucky*, 234 U. S. 579.

Nothing was done in New York then except this:   The papers received from the Missouri Clearing House Branch Office were examined and filed in the Home Office; and

certain calculations and appropriate entries in the books
and on the papers were made there.   No money was paid
then to Dodge.   The nominal advance was less than the
amount, including accrued premium, then due by him
to the company; and Dodge balanced the account by
paying in Missouri $116.40.   In 1903, when a similar loan
agreement was made, the nominal amount of the loan ex-
ceeded the sum due for premiums by $486.91; and a check
for that sum was drawn by the company in New York
and sent by mail from there to Dodge in Missouri.   In
1904 a further check for $92.10 was sent from New York
by the company to Dodge under a similar loan agreement.
Under the 1903 agreement the policy was delivered to
the company and it had remained in the company's pos-
session at the Home Office.   But when the loan agreement
here in question was made, nothing was done in New
York except to examine and file the papers and to make
the calculations and entries.   No discretion was exercised
there by the company's official.   By the terms of the
policy the company had already assented to the amount
nominally advanced as a loan and to the rate of interest
to be charged.   The functions exercised by the officials
at New York were limited to determining whether the
calculations were correct and whether papers were prop-
erly executed and filed.

These acts so done by the company at its Home Office
in connection with the loan agreement were similar in
character to those performed when the policy was written.
The application for the policy addressed to the company
at its Home Office was likewise delivered at the Mis-
souri Clearing House and forwarded to the Home Office.
The application was considered and accepted in New
York.   The policy was executed there.   It provided that
the premiums and the insurance should be payable there.
But such acts did not prevent the policy being held to be
a Missouri contract.   *Equitable Life Assurance Society*

v. *Clements, supra; Northwestern Life Insurance Co.* v. *McCue,* 223 U. S. 234.    Even if the loan agreement be treated as an independent contract, it should, if facts are allowed to control, be held to have been made in Missouri.    But the loan agreement was not an independent contract; nor is it to be treated as a modification of the original contract.    It was an act contemplated by the policy and was subsidiary to it, as an incident thereof.    What was done by the officials at the Home Office was not making a New York contract, but performing acts under a Missouri contract.

*Second:*    What is the effect of the provision in the loan agreement that it shall be deemed to have been made in New York?

The provision "That the application for said loan was made to said company at its Home Office in the City of New York, was accepted, the money paid by it, and this agreement made and delivered there; that said principal and interest are payable at said Home Office, and that this contract is made under and pursuant to the laws of the State of New York, the place of said contract being said Home Office of said company" is inoperative.    For acts essential to the making of any agreement involving a pledge of the policy were done by Dodge, by the beneficiary, and by the company's agent in Missouri and were subject to the prohibition of a statute of that State which prevented the operation there of inconsistent New York laws.    If the laws of Missouri and of New York had left the parties free to contract insurance on such terms as they pleased, they might with effect have elected to be bound by the law of the State of their preference, whatever the place of the contract; in doing so, they would in effect have specified terms of the contract.    But provisions in contracts for incorporating the laws of a particular State are inoperative, so far as the law agreed upon is inconsistent with the law of the

State in which the contract is actually made. *Mutual Life Insurance Co.* v. *Hill*, 193 U. S. 551, 554; *Knights of Pythias* v. *Meyer*, 198 U. S. 508. Where the validity of a provision is dependent upon the place in which the contract is made, the actual facts alone are significant. Persons resident in Missouri, who enter there into a contract which is specifically controlled by the laws of that State, cannot, by agreeing that a modification inconsistent with the requirements of the Missouri law shall be deemed to have been made elsewhere, escape the prohibition of the Missouri statute. The fact that one of the parties to the contract is a corporation and hence capable of having a residence also in another State, and that some acts in connection with the contract were done by it there, does not affect the result. The company, although a foreign corporation, was, for this purpose, a resident of Missouri, or at least, was present in Missouri. *Barrow Steamship Co.* v. *Kane*, 170 U. S. 100; *Dunlop Pneumatic Tyre Company* v. *Actien-Gesellschaft, etc.*, 1 K. B. (1902) 342.

*Third:* Even if the rules ordinarily applied in determining the place of a contract required this court to hold, as a matter of general law, that the loan agreement was made in New York, it would not necessarily follow that the Missouri statute was unconstitutional because it prohibited giving effect in part to the loan agreement. There is no constitutional limitation by virtue of which a statute enacted by a State in the exercise of the police power is necessarily void, if, in its operation, contracts made in another State may be affected. *Emery* v. *Burbank*, 163 Massachusetts, 326; *Hervey* v. *Rhode Island Locomotive Works*, 93 U. S. 664. The test of constitutionality to be applied here is that commonly applied when the validity of a statute limiting the right of contract is questioned, namely: Is the subject-matter within the reasonable scope of regulation? Is the end

legitimate? Are the means appropriate to the end sought
to be obtained? If so, the act must be sustained, unless
the court is satisfied that it is clearly an arbitrary and
unnecessary interference with the right of the individual
to his personal liberty. Here the subject is insurance; a
subject long recognized as being within the sphere of
regulation of contracts. The specific end to be attained
was the protection of the net value of insurance policies
by prohibiting provisions for forfeiture; an incident of
the insurance contract long recognized as requiring reg-
ulation. The means adopted was to prescribe the limits
within which the parties might agree to dispose of the
net value of the policy otherwise than by commutation
into extended insurance; a means commonly adopted in
nonforfeiture laws, only the specific limitation in ques-
tion being unusual. The insurance policy sought to be
protected was a contract made within the State between
a citizen of the State and a foreign corporation also resi-
dent or present there. The protection was to be afforded
while the parties so remained subject to the jurisdiction
of the State. The protection was accomplished by refus-
ing to permit the courts of the State to give to acts done
within it by such residents (Dodge did no act elsewhere),
the effect of nullifying in part that nonforfeiture pro-
vision, which the legislature deemed necessary for the
welfare of the citizens of the State and for their protec-
tion against acts of insuring corporations. The statute
does not invalidate any part of the loan; it leaves intact
the ordinary remedies for collecting debts. The statute
merely prohibits satisfying a part of the debt out of the
reserve in a manner deemed by the legislature destruc-
tive of the protection devised against forfeiture. The
provision may be likened to homestead and exemption
laws by which creditors are limited in respect to the prop-
erty out of which their claims may be enforced. When
the New York Life Insurance Company sought and ob-

tained permission to do business within the State, and when the policy in question and the loan agreement were entered into, this statute was in existence and was of course known to the company. It has no legal ground of complaint, when the Missouri courts refuse to give to the loan agreement effect in a manner and to an extent inconsistent with the express prohibition of the statute. The significance of the fact that this suit was brought in a Missouri court must not be overlooked. See *Bond* v. *Hume*, 243 U. S. 15; *Union Trust Co.* v. *Grosman*, 245 U. S. 412.

*New York Life Insurance Co.* v. *Head, supra,* furnishes no support for the contention made by the company here. The facts differ widely in the two cases. There the insured was not a citizen or resident of Missouri and does not appear ever to have been within the State except at the time when the application was made and the policy delivered. Here the insured was at all times a citizen and resident of the State. There the insured had assigned the policy to his daughter, who was a citizen of New Mexico and, so far as appears, had never been within the State of Missouri. Here the insured remained the owner of the policy. There the loan agreement was made by the assignee, a stranger to the policy; and the assignment being accepted and acted upon by the company resulted in a novation of the contract. Here the loan agreement was made by the insured. There every act in any way connected with the loan agreement, whether performed by the company or by the assignee (the insured performed none) was performed in some State or Territory other than Missouri. Here every act was performed in Missouri except as above stated. If this court had held constitutional the statute of Missouri as construed by its Supreme Court in that case, it would have sanctioned, not regulation by the State of the insurance of its citizens, but an arbitrary interference by one State with the rights

of citizens of other States. On the other hand, to sustain
the contention made by the company in this case would
deny to a State the full power to protect its citizens in
respect to insurance, a power which has been long and
beneficently exercised. For the power to protect will
be seriously abridged, if it is held that the State of Mis-
souri cannot constitutionally prohibit those who are its
citizens and corporations within its jurisdiction from
contracting themselves out of the limitations imposed
by its legislature, in the exercise of the police power, upon
the contracts actually made within the State. And un-
less it is so abridged, the Missouri nonforfeiture law,
as applied to the facts of this case, cannot be held invalid.

Nor does *Allgeyer* v. *Louisiana*, 165 U. S. 578, furnish
support to the company's contention. Allgeyer, a citi-
zen and resident of Louisiana, had made in New York,
with a corporation organized and doing business there,
an open contract for marine insurance to cover cotton
to be purchased and shipped. Shipments to be covered
were required to be reported by letter addressed to the
company at New York. Allgeyer mailed in Louisiana
such a letter addressed to New York City. A Louisiana
statute made it a crime for any one to do any act to ef-
fect insurance in any marine insurance company which
had not established a place of business within the State
and appointed an authorized agent upon whom process
might be served. The insurance company there referred
to had not been authorized to do business in Louisiana
and actually did no business there. Allgeyer was sen-
tenced for mailing the letter. This court held that the
statute was unconstitutional as construed by the state
court, because it denied to a citizen of the United States
rights guaranteed by the Fourteenth Amendment.

But the case did not require the court to decide whether
a State could prohibit its citizens from making contracts
with corporations organized under the laws of and doing

business in another State; nor whether the contract there involved had been made in New York; nor whether it was valid. And it did not in fact decide any of those questions; for they were not in issue. It was admitted (*a*) that the contract there involved—the open insurance policy—had been made in New York and (*b*) that it was valid. The only question presented to this court was whether the State, in order more effectually to enforce its foreign corporations act, could prohibit its citizens from doing, within the State, certain acts which were essential to the enjoyment of rights secured by such a valid contract made without the State. In the paragraph near the close of the opinion (p. 593) this is pointedly expressed:

"In such a case as the facts here present the policy of the State in forbidding insurance companies which had not complied with the laws of the State from doing business within its limits cannot be so carried out as to prevent the citizen from writing such a letter of notification as was written by the plaintiffs in error in the State of Louisiana, when it is written pursuant to a valid contract made outside the State and with reference to a company which is not doing business within its limits."

The more elaborate discussion which preceded this paragraph makes clear the ground of the decision.

"In the case before us the contract was made beyond the territory of the State of Louisiana, and the only thing that the facts show was done within that State was the mailing of a letter of notification, as above mentioned, which was done after the principal contract had been made." (P. 587.)

"In this case the only act which it is claimed was a violation of the statute in question consisted in sending the letter through the mail notifying the company of the property to be covered by the policy already delivered. We have then a contract which it is conceded was made

outside and beyond the limits of the jurisdiction of the State of Louisiana, being made and to be performed within the State of New York, where the premiums were to be paid and losses, if any, adjusted. The letter of notification did not constitute a contract made or entered into within the State of Louisiana. It was but the performance of an act rendered necessary by the provisions of the contract already made between the parties outside of the State. It was a mere notification that the contract already in existence would attach to that particular property. In any event, the contract was made in New York, outside of the jurisdiction of Louisiana, even though the policy was not to attach to the particular property until the notification was sent." (P. 588.)

"It was a valid contract, made outside of the State, to be performed outside of the State, although the subject was property temporarily within the State. As the contract was valid in the place where made and where it was to be performed, the party to the contract upon whom is devolved the right or duty to send the notification in order that the insurance provided for by the contract may attach to the property specified in the shipment mentioned in the notice, must have the liberty to do that act and to give that notification within the limits of the State, any prohibition of the state statute to the contrary notwithstanding. The giving of the notice is a mere collateral matter; it is not the contract itself, but is an act performed pursuant to a valid contract which the State had no right or jurisdiction to prevent its citizens from making outside the limits of the State." (P. 592.)

*Fourth:* Furthermore, the right of citizens of the United States which the *Allgeyer Case* sustained "is the liberty of natural, not artificial persons." *Northwestern Life Insurance Co.* v. *Riggs, supra,* p. 255. While a State may not (except in the reasonable exercise of the police

power) impair. the freedom of contract of a citizen of
the United States, "it can prevent the foreign insurers
from sheltering themselves under his freedom." *Nutting
v. Massachusetts*, 183 U. S. 553, 558; *Phœnix Insurance
Co. v. McMaster*, 237 U. S. 63. The insurance company
cannot be heard to object that the Missouri statute is
invalid, because it deprived Dodge of rights guaranteed
to natural persons, citizens of the United States. *Erie
R. R. Co. v. Williams*, 233 U. S. 685, 705; *Jeffrey Mfg.
Co. v. Blagg*, 235 U. S. 571, 576.

In my opinion the decision of the Springfield Court
of Appeals should be affirmed.

MR. JUSTICE DAY, MR. JUSTICE PITNEY and MR. JUS-
TICE CLARKE concur in this dissent.