GRAY *v.* AETNA LIFE INS. CO.

(*Knoxville,* September Term, 1941.)

Opinion filed November 29, 1941.

Don Gray, of Johnson City, for appellant.

Cox, Taylor, Epps & Miller, of Johnson City, for appellee.

Mr. Justice DeHaven delivered the opinion of the Court.

Complainant seeks by her bill herein to recover of defendant the sum of $2,429 upon a policy of life insurance issued by defendant to complainant and her husband, J. S. Gray, on March 18, 1919, insuring their joint lives for the sum of $5,000. It is also sought by the bill to recover of defendant the further sum of $146.77 which it is alleged the defendant collected as compound interest on loans made by it to the insured and to have this sum applied to purchase extended insurance in the sum of $2,429 to January 11, 1935.

The bill alleges that defendant lapsed the policy on December 18, 1933, for nonpayment of premium due on that date, and applied the sum of $17.01, which defendant claims was the net sum available to the insured, after deducting the indebtedness on the policy from its cash value, to the purchase of extended insurance to the amount of $2,429 for forty-five days, from December 18, 1933, to February 1, 1934. That J. S. Gray, one of the insured, died on January 6, 1935, and defendant has denied any liability under the policy.

The bill further alleges that four loans were obtained by the insured from defendant on the sole security of the policy contract, as provided therein, each loan being evidenced by a note, the first one having been obtained March 15, 1927, the second March 7, 1930, the third March 17, 1932, and the fourth May 1, 1933, in the aggregate principal amount of $2,478; that the first two notes provided for the payment of interest annually in advance, and the last two notes provided for the payment of interest on the following anniversary date of the policy and annually thereafter; that each of the notes provided that when any interest became due and was not paid the same should be added to and become a part of the principal indebtedness evidenced by the note and subject to the

same rate of interest; that at the time the last note was made, on May 1, 1933, the insured executed their joint note in the sum of $2,478, which included accrued compound interest from the date of the previous loan of March 7, 1932; that on December 18, 1933, when defendant lapsed the policy for non-payment of premium, it added accrued interest to date to the face amount of the last note of $2,478, and deducted the total amount from the cash value of the policy, which it claimed left only $17.01 net cash value available to the insured, and applied this amount, as heretofore stated, to purchase extended insurance for the sum of $2,429 to February 1, 1934. It is further alleged that each note also contained a provision that payments "shall be made at the Home Office of said Company in Hartford, Connecticut, or to any agent whose authority for receiving the same shall be the possession of this note on a receipt filed by an executive officer of the Company."

It is further alleged that no agreement to compound interest on the indebtedness evidenced by said notes was ever entered into between the insured and defendant after the interest thereon accrued or became due; that the law of the State of Connecticut was at the time of the execution of the notes, and is at the present time, as follows:

"That, compound interest cannot be recovered in law or equity, unless the party to be charged with it has made an express agreement to pay it, after it has accrued."

"That a contract for the payment of compound interest, made before interest has accrued, is, to that extent, void, and will not, unless in special cases, be enforced, either in law or equity, may now be considered as the law of this State."

It is then alleged in the bill that any contract for the payment of compound interest made before the interest

was due, being void to the extent of the compound interest over simple interest, the defendant unlawfully charged and collected as an indebtedness against the insurance policy, the sum of $146.77, or more, which is the excess of compound interest over simple interest, and which amount defendant should have, under the terms of the policy, applied to purchase extended insurance in the amount of $2,429 to January 11, 1935.

Defendant demurred to the bill upon the grounds, (1) That it appeared from the face of the bill that the policy had lapsed for non-payment of premiums prior to the death of J. S. Gray; (2) That the bill shows upon its face that the policy upon which suit is based was issued upon the lives of residents of Tennessee, and, therefore, governed by the laws of Tennessee; that the charging of compound interest is valid under the laws of Tennessee, and since the terms of the policy required defendant to make the loans to insured, the notes evidencing the same are also governed by the laws of Tennessee, and, therefore, valid; (3) That the bill shows upon its face that each time the insured signed a new loan note there was incorporated therein the principal and accrued interest on the previous loans, and insured thereby ratified and confirmed any compound interest that may have been included in the previous loans.

The chancellor sustained the demurrer and dismissed the bill. Complainant has appealed to this court, and while a number of errors are assigned, assignments number one directed to the action of the chancellor in holding that the notes or loan agreements were Tennessee contracts; and number two directed to the holding of the chancellor that the notes or loan contracts were subsidiary contracts, are, in reality, the only material assignments made.

Complainant contends that the notes or loan agreements are Connecticut contracts and governed by the laws of that state making the collection of compound interest illegal.

▮ (1) The policy sued on is a part of the record in its original form. It appears therefrom, and from the attached application, which are a part of the policy, that the insured were residents of Washington County, Tennessee, at the time the policy was issued and delivered to them. The policy, then, must be construed as a Tennessee contract. Code 6086; *Arnold* v. *New York Life Ins. Co.*, 131 Tenn., 720, 177 S. W., 78.

▮ (2) In *Woods, Adm'r,* v. *Rankin,* 49 Tenn. (2 Heisk.), 46, it was held that a note stipulating to pay compound interest is not illegal. In *Hale* v. *Hale,* 41 Tenn. (1 Cold.), 233, 78 Am. Dec., 490, the court said, "We are aware of no rule of law which would be violated, by permitting the parties to agree at the time of the loan, that if the interest be not paid at the time stipulated, it should be treated as principal, and bear interest. This is surely nothing more than justice to the lender." The policy here involved provides, "Interest on any indebtedness hereon not paid when due shall be added to the principal and reckoned as a part thereof."

Section 6179 of the Code provides that no policy of life insurance shall be issued in this State unless the same shall contain the provisions set out thereunder. Paragraph (7) is, in part, as follows:

"A provision that after three full years' premiums have been paid the company at any time while the policy is in force *will advance* on proper assignment of the policy and on the sole security thereof, at a specified rate of interest, a sum equal to, or at the option of the owner of the policy, less than the reserve at the end of the cur-

rent policy year on the policy . . .; and that the company will deduct from such loan value any existing indebtedness on the policy and any unpaid balance of the premium for the current policy year, and may collect interest in advance on the loan to the end of the current policy year. . . . No condition other than as herein provided shall be exacted as a prerequisite to any such advance. . . ." (Italics ours.)

■ All policies both of domestic and foreign companies authorized to do business in the State, outside the specially excepted classes, must be construed as falling under the provisions of this statute. *Arnold* v. *Insurance Co., supra.*

The provisions of paragraph 12 of the policy are in substantial compliance with the requirements of paragraph (7) of section 6179 of the Code. Paragraph 12 of the policy is as follows:

"After three full years' premiums have been paid hereon, before default in the payment of premium and before the policy becomes a claim, the Company *will loan* upon the sole security of this policy at six per cent interest payable annually in advance the whole, or, at the option of the borrowers, any part of the cash value shown by Table A at the end of the current policy year, less all indebtedness to the Company hereon and less also any unpaid portion of the premium and interest on the loan for the remainder of the current policy year. For the purpose of such loan the policy shall be returned to the Company together with a proper assignment of the same and said assignment may be executed by the life beneficiary alone, provided the interest of such beneficiary is not then assigned." (Italics ours.)

■ Paragraph 12 of the policy obligated the company to advance or loan to the insured, under the conditions

set forth, when requested, the whole or part of the cash value of the policy. Under Code 6179, which must be read into the policy, and under the terms of the policy itself, the making of the advance or loan was mandatory and not left to the discretion or election of the company. The language "will loan" definitely fixed this obligation on the company. Had the company refused to make an advance or loan according to its contract obligation, the insured would clearly have had the right to maintain an action for damages. *Hubbard* v. *Equitable Life Assur. Soc.*, 81 W. Va., 663, 95 S. E., 811, 4 A. L. R., 886; Cyc. of Ins. Law (Couch), Vol. 8, section 1943; 29 Am. Jur., p. 382. The notes executed by the insured covering the advances or loans made them by the company were incidental to the performance of the loan agreement contained in the policy. The notes but evidenced the amount of money advanced or loaned, and were subsidiary to the policy contract, and not separate and distinct contracts; but must be considered as a part thereof. The advances or loans were made not as the result of any new negotiation or agreement, but made in the discharge of pre-existing contract obligations.

In *Mutual Life Ins. Co.* v. *Liebing*, 259 U. S., 209, 42 S. Ct., 467, 468, 66 L. Ed., 900, it was held that the validity of a policy loan agreement between the insured, a citizen of Missouri, and the insurance company, a New York corporation, whether regarded as completed by the delivery of the application for the loan to the company's representative in Missouri, by whom it was forwarded, together with the policy, to the home office, the policy containing a positive promise by the company to make the loan if asked, or by the delivery of the check for the loan, also in Missouri, was to be tested by the Missouri laws. The court said, *inter alia*, "The policy now sued upon

contained a positive promise to make the loan if asked, whereas in the one last mentioned [*New York Life Ins. Co.* v. *Dodge,* 246 U. S., 357, 38 S. Ct., 337, 62 L. Ed., 772, Ann. Cas., 1918E, 593], it might be held that some discretion was reserved to the company. For here the language is 'the company will . . . loan amounts within the limits of the cash surrender value,' etc., whereas there it was 'cash loans can be obtained.' "

Complainant relies on the case of *New York Life Ins. Co.* v. *Dodge, supra* [246 U. S., 357, 38 S. Ct., 338, 62 L. Ed., 772, Ann. Cas, 1918E, 593], where the language of the contract of insurance was "cash loans can be obtained," which it was said in *Mutual Life Ins. Co.* v. *Liebing, supra,* might be held to reserve to the company some discretion. The language of the policy here involved is that the company *"will loan,"* the same as that appearing in the policy sued upon in *Mutual Life Ins. Co.* v. *Liebing, supra.*

We have examined the authorities cited by counsel for complainant and find them inapplicable to the instant case.

█ It is further contended for complainant that the language of the notes fixes no maturity date therefor. Hence, it is argued, the notes matured on the date they were executed and were demand notes, and compound interest could not be charged after such maturity. The loans were, in fact, advancements on the policy, secured by an assignment thereof. Code 6179. The language of the respective notes, in part, is that the makers "acknowledge the amount of this note with any interest that may accrue to be an indebtedness to said Aetna Life Insurance Company on account of policy No. 207436," etc.

The policy provides among other things, as follows:

"The said sum insured shall be payable to the death beneficiary as follows: The survivor of the said insured less any unpaid premium for the current policy year; the cash surrender value or the loan value hereinafter described shall be payable to the party herein called the life beneficiary as follow: both the said insured, and all such payments shall be subject to the rights herein granted for varying the provisions of this policy *and to any indebtedness to the Company on account of this policy, including all loans made by the Company as herein provided.*" (Italics ours.)

The loans, it is clear, were not collectible by the company until the maturity or lapse of the policy. In the meantime both under the terms of the policy and of the notes and of the statute (Code 6179) interest was chargeable annually upon the advancements. The contention that the notes matured on the date that they were made cannot be sustained.

Our conclusion is that the notes in question as to their validity is to be governed by the laws of Tennessee and not by the laws of Connecticut. In this view complainant is not entitled to have the difference between compound interest and simple interest used to purchase extended insurance extending beyond the date of the death of J. S. Gray. The chancellor did not err in sustaining the demurrer and dismissing the bill. His decree is, therefore, affirmed.